achievement of any applicable Performance Goals) as a condition to the vesting of any Performance Share or Performance Unit Award.

Section 7.3   Rights as a Stockholder. A Participant shall not have any rights as a stockholder in respect of Performance Shares or Performance Units awarded pursuant to the Plan (including but not limited to the right to vote on any matter submitted to the Company's stockholders) until such time as the Shares attributable to such Performance Shares or Performance Units have been issued to such Participant or his or her beneficiary.

Section 7.4   Performance Goals. The Administrator shall establish the Performance Goals that must be satisfied in order for a Participant to receive an Award for a Performance Period or for an Award of Performance Shares or Performance Units to be earned or vested. At the discretion of the Administrator, the Performance Goals may be based upon the total return to the Company's shareholders, inclusive of dividends paid, during the applicable Performance Cycle (determined either in absolute terms or relative to the performance of one or more similarly situated companies or a published index covering the performance of a number of companies), or upon the relative or comparative attainment of one or more of the following criteria, whether in absolute terms or relative to the performance of one or more similarly situated companies or a published index covering the performance of a number of companies and whether gross or net, before or after taxes and/or before or after any other adjustments: earnings before interest, taxes, depreciation and amortization, with or without adjustments for stock-option based and other equity-based compensation expenses, and/or management, transaction and/or similar fees paid to the principal stockholders or their affiliates, , operating earnings, net earnings, income, earnings before interest and taxes, total shareholder return, return on the Company's assets, increase in the Company's earnings or earnings per share (basic or diluted), revenue growth, share price performance, return on invested capital, operating income, pre- or post-tax, income, net income, economic value added, profit margins, cash flow, improvement in or attainment of expense or capital expenditure levels, improvement in or attainment of working capital levels, return on equity, debt reduction, gross profit, market share, cost reductions, workforce satisfaction and diversity goals, workplace health and safety goals, employee retention, completion of key projects and strategic plan development and/or implementation, job profit or performance against a multiplier; or, in the case of persons who are not Covered Employees, such other criteria as may be determined by the Administrator. Performance Goals may be established on a Company-wide basis or with respect to one or more business units, divisions, Subsidiaries, or products. When establishing Performance Goals for a Performance Cycle, the Administrator may exclude any or all "extraordinary items" as determined under U.S. generally accepted accounting principles and as identified in the financial statements, notes to the financial statements or management's discussion and analysis in the annual report, including, without limitation, the charges or costs associated with restructurings of the Company, discontinued operations, extraordinary items, capital gains and losses, dividends, Share repurchase, other unusual or non-recurring items, and the cumulative effects of accounting changes. Except in the case of Awards to Covered Employees intended to be performance-based compensation under Section 162(m) of the Code, the Administrator may also adjust the Performance Goals for any Performance Cycle as it deems equitable in recognition of unusual or non-recurring events affecting the Company, changes in applicable tax laws or accounting principles, or such other factors as the Administrator may determine (including, without limitation, any adjustments that would result in the Company paying non-deductible compensation to a Participant).

Section 7.5   Special Rule for Performance Goals. If, at the time of grant, the Administrator intends a Performance Share Award, Performance Unit or other Performance Award to qualify as performance-based compensation within the meaning of Section 162(m) of the Code, the Administrator must establish Performance Goals for the applicable Performance Cycle prior to the 91st day of the Performance Cycle (or by such other date as may be required under Section 162(m) of the Code) but not later than the date on which 25% of the Performance Cycle has lapsed.

Section 7.6   Negative Discretion. Notwithstanding anything in this Article VII to the contrary, the Administrator shall have the right, in its absolute discretion, (i) to reduce or eliminate the amount otherwise payable to any Participant under Section 7.9 based on individual performance or any other factors that the Administrator, in its discretion, shall deem appropriate and (ii) to establish rules or procedures that have the effect of limiting the amount payable to each Participant to an amount that is less than the maximum amount otherwise authorized under the Award Agreement or under the Plan.

Section 7.7    Affirmative Discretion. Notwithstanding any other provision in the Plan to the contrary, but subject to the maximum number of Shares available for issuance under Section 2.1 of the Plan, (i) the Administrator shall have the right, in its discretion, to grant an Award in cash, Shares or other Awards, or in any combination thereof, to any Participant (except for a Participant who is a Covered Employee, to the extent Section 162(m) of the Code is applicable to the Company and the Plan for the year in which the amount paid would ordinarily be deductible by the Company for federal income tax purposes in an amount up to the maximum Award payable), based on individual performance or any other criteria that the Administrator deems appropriate and (ii) in connection with the hiring of any person who is or becomes a Covered Employee, the Administrator may provide for a minimum bonus amount or Award payment in any Performance Cycle, regardless of whether the performance objectives are attained.

Section 7.8    Certification of Attainment of Performance Goals. As soon as practicable after the end of a Performance Cycle and prior to any payment or vesting in respect of such Performance Cycle, the Administrator shall certify in writing the number of Performance Shares or other Performance Awards and the number and value of Performance Units that have been earned or vested on the basis of performance in relation to the established Performance Goals.

Section 7.9    Payment of Awards. Payment or delivery of Company Common Stock with respect to earned Performance Shares and earned Performance Units shall be distributed to the Participant or, if the Participant has died, to the Participant's Eligible Representative, as soon as practicable after the expiration of the Performance Cycle and the Administrator's certification under Section 7.8 above (unless an Award Agreement sets forth one or more other dates) and in any event no later than the earlier of (i) 2 ½ months after the end of the fiscal year in which the Performance Cycle expires and (ii) ninety (90) days after the expiration of the Performance Cycle, provided that payment or delivery of Company Common Stock with respect to earned Performance Shares and earned Performance Units shall not be distributed to a Participant until any other conditions on payment of such Awards established by the Administrator have been satisfied. The Administrator shall determine whether earned Performance Shares and the value of earned Performance Units are to be distributed in the form of cash, Shares or in a combination thereof, with the value or number of Shares payable to be determined based on the Fair Market Value of the Company Common Stock on the date of the Administrator's certification under Section 7.8 above. The Administrator shall have the right to impose whatever conditions it deems appropriate with respect to the award or delivery of Shares, including conditioning the vesting of such Shares on the performance of additional service.

Section 7.10    Newly Eligible Participants. Notwithstanding anything in this Article VII to the contrary, the Administrator shall be entitled to make such rules, determinations and adjustments as it deems appropriate with respect to any Participant who becomes eligible to receive Performance Shares, Performance Units or other Performance Awards after the commencement of a Performance Cycle.

## ARTICLE VIII.

## DEFERRED SHARE UNITS

Section 8.1    Grant. Subject to Article XII, the Administrator is authorized to make awards of Deferred Share Units to any Participant selected by the Administrator at such time or times as shall be determined by the Administrator without regard to any election by the Participant to defer receipt of any compensation or bonus amount payable to him. The grant date of any freestanding Deferred Share Unit under the Plan will be the date on which such freestanding Deferred Share Unit is awarded by the Administrator or on such other future date as the Administrator shall determine in its sole discretion. In addition, subject to Article XII, on fixed dates established by the Administrator and subject to such terms and conditions as the Administrator shall determine, the Administrator may permit a Participant to elect to defer receipt of all or a portion of his annual compensation and/or annual incentive bonus ("Deferred Annual Amount") payable by the Company or a Subsidiary and receive in lieu thereof an Award of elective Deferred Share Units ("Elective Deferred Share Units") equal to the greatest whole number that may be obtained by dividing (i) the amount of the Deferred Annual Amount, by (ii) the Fair Market Value of one Share on the date of payment of such compensation and/or annual bonus. Each Award of Deferred Share Units shall be evidenced by an Award Agreement that shall specify (x) the number of Shares to which the Deferred Share Units pertain, (y) the time and form of payment of the Deferred Share Units and (z) such terms and conditions not inconsistent with the Plan as the Administrator shall

determine, including customary representations, warranties and covenants with respect to securities law matters and such provisions as may be required pursuant to Section 409A of the Code. Upon the grant of Deferred Share Units pursuant to the Plan, the Company shall establish a notional account for the Participant and will record in such account the number of Deferred Share Units awarded to the Participant. No Shares will be issued to the Participant at the time an award of Deferred Share Units is granted. Subject to Article XII, Deferred Share Units may become payable on a Corporate Event, termination of employment or on a specified date or dates set forth in the Award Agreement evidencing such Deferred Share Units.

Section 8.2    Rights as a Stockholder. A Participant shall not have any rights as a stockholder in respect of Deferred Share Units awarded pursuant to the Plan (including but not limited to the right to vote on any matter submitted to the Company's stockholders) until such time as the Shares attributable to such Deferred Share Units have been issued to such Participant or his or her beneficiary.

Section 8.3    Vesting. Unless the Administrator provides otherwise at or after the grant date, the portion of each Award of Deferred Share Units that consists of freestanding Deferred Share Units, together with any dividend equivalents credited with respect thereto, will be subject to a restriction period of such length and subject to such terms and conditions as determined by the Administrator. In its discretion, the Administrator may establish performance-based vesting conditions with respect to Awards of Deferred Share Units (in lieu of, or in addition to, time-based vesting) based on one or more of the Performance Goals listed in Section 7.4; provided that any Award of Deferred Share Units made to any Covered Employee that is intended to qualify as performance-based compensation under Section 162(m) of the Code shall be subject to the same restrictions and limitations applicable to Awards of Performance Shares and Performance Units under Section 7.5 and Section 7.8. Except as otherwise provided in the applicable Award Agreement or as provided in Section 11.4, the portion of each Award of Deferred Share Units that consists of Elective Deferred Share Units, together with any dividend equivalents credited with respect thereto, shall not be subject to any restriction period and shall be non-forfeitable at all times.

Section 8.4    Further Deferral Elections. A Participant may elect to further defer receipt of Shares issuable in respect of Deferred Share Units (or an installment of an Award) for a specified period or until a specified event, subject in each case to the Administrator's approval and to such terms as are determined by the Administrator, all in its sole discretion. Subject to any exceptions adopted by the Administrator, such election must generally be made at least twelve (12) months prior to the prior settlement date of such Deferred Share Units (or any such installment thereof) and must defer settlement for at least five (5) years after such prior settlement date. A further deferral opportunity does not have to be made available to all Participants, and different terms and conditions may apply with respect to the further deferral opportunities made available to different Participants.

Section 8.5    Settlement. Subject to this Article VIII, upon the date specified in the Award Agreement evidencing the Deferred Share Units, for each such Deferred Share Unit the Participant shall receive, in the Administrator's discretion, (i) a cash payment equal to the Fair Market Value of one (1) Share as of such payment date, (ii) one (1) Share or (iii) any combination of cash and Shares.

## ARTICLE IX.

## OTHER STOCK-BASED AWARDS

Section 9.1    Grant of Stock-Based Awards. The Administrator is authorized to make Awards of other types of equity-based or equity-related awards ("Stock-Based Awards") not otherwise described by the terms of the Plan in such amounts and subject to such terms and conditions as the Administrator shall determine. All Stock-Based Awards shall be evidenced by an Award Agreement. Such Stock-Based Awards may be granted as an inducement to enter the employ of the Company or any Subsidiary or in satisfaction of any obligation of the Company or any Subsidiary to an officer or other key employee, whether pursuant to this Plan or otherwise, that would otherwise have been payable in cash or in respect of any other obligation of the Company. Such Stock-Based Awards may entail the transfer of actual Shares, or payment in cash or otherwise of amounts based on the value of Shares and may include, without limitation, Awards designed to comply with or take advantage of the applicable local laws of jurisdictions other than the United States.

## ARTICLE X.

### DIVIDEND EQUIVALENTS

**Section 10.1     Generally.** Dividend Equivalents may be granted to Participants at such time or times as shall be determined by the Administrator. Dividend Equivalents may be granted in tandem with other Awards, in addition to other Awards, or freestanding and unrelated to other Awards. The grant date of any Dividend Equivalents under the Plan will be the date on which the Dividend Equivalent is awarded by the Administrator, or such other date as the Administrator shall determine in its sole discretion. Dividend Equivalents shall be evidenced in writing, whether as part of the Award Agreement governing the terms of the Award, if any, to which such Dividend Equivalent relates, or pursuant to a separate Award Agreement with respect to freestanding Dividend Equivalents, in each case, containing such provisions not inconsistent with the Plan as the Administrator shall determine, including customary representations, warranties and covenants with respect to securities law matters; provided that no Dividend Equivalent shall vest or be payable based on the exercise of an Option or SAR.

## ARTICLE XI.

### TERMINATION AND FORFEITURE

**Section 11.1     Termination for Cause.** Unless otherwise determined by the Administrator at or after the grant date and set forth in the Award Agreement covering the Award or otherwise in writing, if a Participant's employment or service terminates for Cause, all Options and SARs, whether vested or unvested, and all other Awards that are unvested or unexercisable or otherwise unpaid (or were unvested or unexercisable or unpaid at the time of occurrence of Cause) shall be immediately forfeited and canceled, effective as of the date of the Participant's termination of service. Notwithstanding the foregoing, unless otherwise determined by the Administrator at or after the grant date and set forth in the Award Agreement covering the Award or otherwise in writing, any Award that vested or was paid to the Participant or otherwise settled during the twelve months prior to or any time after the Participant engaged in the conduct that gave rise to the termination for Cause shall upon demand by the Administrator be immediately forfeited and disgorged or paid to the Company together with all gains earned or accrued due to the exercise of such Awards or sale of Company Common Stock issued pursuant to such Awards.

**Section 11.2     Termination for Any Other Reason.** Unless otherwise determined by the Administrator at or after the grant date and set forth in the Award Agreement covering the Award or otherwise in writing, if a Participant's employment or service terminates for any reason other than Cause:

(a)     All Awards that are unvested or unexercisable shall be immediately forfeited and canceled, effective as of the date of the Participant's termination of service.

(b)     All Options and SARs that are vested shall remain outstanding until (x) in the case of termination for death or Disability, the first anniversary of the date of the Participant's death, (y) the 60th day after the date of termination for any reason other than death or Disability or (z) the Award's normal expiration date, whichever is earlier, after which any unexercised Options and SARs shall immediately terminate.

**Section 11.3     Post-Termination Informational Requirements.** Before the settlement of any Award following termination of employment or service, the Administrator may require the Participant (or the Participant's Eligible Representative, if applicable) to make such representations and provide such documents as the Administrator deems necessary or advisable to effect compliance with Applicable Law and determine whether the provisions of Section 11.1 or Section 11.4 may apply to such Award.

**Section 11.4     Forfeiture of Awards.**

(a)     Forfeiture for Financial Reporting Misconduct. If the Company is required to prepare an accounting restatement due to material noncompliance by the Company with any financial reporting requirement under the securities laws, (x) with respect to any Participant who either knowingly or grossly negligently engaged in the

misconduct or knowingly or grossly negligently failed to prevent the misconduct as determined by the Administrator or is one of the individuals subject to automatic forfeiture under Section 304 of the Sarbanes-Oxley Act of 2002, such Participant shall forfeit and disgorge to the Company (i) any Awards granted or vested and all gains earned or accrued due to the exercise of Options or SARS or sale of any Company Common Stock during the twelve (12)-month period following the filing of the financial document embodying such financial reporting requirement and (ii) any other Awards that vested based on the materially non-complying financial reporting and (y) with respect to any Participant who is a current or former member of the Leadership Team or other executive officer of the Company (as defined under the Securities Exchange Act of 1934) who received incentive compensation under the Plan during the three-year period preceding the date on which the Company is required to prepare such accounting restatement, based on erroneous data, in excess of what would have been awarded or paid to such Participant under such accounting restatement, such Participant shall forfeit and disgorge to the Company such excess incentive compensation.

(b)    Forfeiture under Applicable Laws or Regulations. In addition to forfeiture for reasons specified in Section 11.4(a), the Company may cancel or reduce or require the Participant to forfeit and disgorge to the Company any Awards granted or vested and any gains earned or accrued due to the exercise of Options or SARS or sale of any Company Common Stock to the extent permitted or required by Applicable Law or regulations in effect on or after the Effective Date. For the avoidance of doubt, the Administrator shall have full authority to implement any policies and procedures necessary to comply with Section 10D of the Securities Exchange Act of 1934, as amended, and any rules promulgated thereunder.

(c)    Forfeiture for Competitive Activity. Unless otherwise determined by the Administrator at or after the grant date and set forth in the Award Agreement covering the Award or otherwise in writing, if during or following a Participant's termination of employment or service with the Company or any of its Subsidiaries the Participant engages in Competitive Activity, all Options and SARs, whether vested or unvested, and all other Awards that are unvested or unexercisable or otherwise unpaid shall be immediately forfeited and canceled, effective as of the date of the Participant's termination of service. Notwithstanding the foregoing, any Award that vested or was paid to the Participant or otherwise settled more than twelve (12) months prior to the date the Participant engaged in Competitive Activity, as determined by the Administrator in its sole discretion, shall not be recovered from the Participant. Any Award vested, paid or otherwise settled in the twelve (12) months prior to the date that the Participant engaged in Competitive Activity or at any time thereafter shall upon demand by the Administrator be immediately forfeited and disgorged or paid to the Company together with all gains earned or accrued due to the exercise of such Awards or sale of any Company Common Stock issued pursuant to such Awards.

(d)    Forfeiture for Other Misconduct. Unless otherwise determined by the Administrator, if (i) the Participant's performance is deemed to contribute substantially to the Company or a Subsidiary incurring significant financial losses; (ii) the Participant's performance is deemed to contribute substantially to a significant downward restatement of any published results of the Company or a Subsidiary; (iii) the Participant engages in conduct that results in or contributes substantially to significant reputational harm to the Company; (iv) the Participant materially breaches or contributes substantially to a material breach of applicable legal and/or regulatory requirements; (y) the Participant engages in conduct that constitutes Cause or (vi) the Participant engages in conduct that results in or contributes substantially to a material breach of the Company's applicable internal policies and procedures, including without limitation those policies in respect of risk management, compliance, disciplinary and any applicable supervisory practices, the Administrator in its sole discretion may suspend the vesting of any Awards granted (or a portion thereof) and/or require the forfeiture and disgorgement to the Company of any Awards (or a portion thereof) granted or vested during the twelve months prior to or any time after the Participant engaged in such misconduct and all gains earned or accrued due to the exercise of such Awards or sale of any Company Common Stock issued pursuant to such Awards.

(e)    Other Recoupment Policies. Awards granted under this Plan (and gains earned or accrued in connection with Awards) shall also be subject to such generally applicable policies as to forfeiture, disgorgement and recoupment (including, without limitation, upon the occurrence of material financial or accounting errors, financial or other misconduct) as may be adopted by the Administrator or the Board from time to time and communicated to Participants. Any such policies may (in the discretion of the Administrator or the Board) be applied to outstanding Awards at the time of adoption of such policies, or on a prospective basis only. The implementation of policies and

procedures pursuant to this Section 11.4 and any modification of the same shall not be subject to any restrictions on amendment or modification of Awards.

Section 11.5    Pre-Public Offering Awards.  The provisions of this Article XI (other than the provisions of Section 11.4(a) and Section 11.4(b)) shall not apply to any Awards granted prior to a Public Offering unless expressly provided otherwise in the Award Agreement.

## ARTICLE XII.

## ADMINISTRATION

Section 12.1    Administrator.  The Plan shall be administered by the Board or an Administrator appointed by the Board, which Administrator shall be constituted to comply with Applicable Laws.

Section 12.2    Powers of the Administrator.  Subject to the provisions of the Plan and, in the case of a committee, the specific duties delegated by the Board to such Administrator, and subject to the approval of any relevant authorities, the Administrator shall have the authority in its discretion to:

(a)    determine the Fair Market Value;

(b)    determine the type or types of Awards to be granted to each Participant;

(c)    select the Service Providers to whom Awards may from time to time be granted hereunder;

(d)    determine all matters and questions related to the termination of service of a Service Provider with respect to any Award granted to him or her hereunder, including, but not by way of limitation of, all questions of whether a particular Service Provider has taken a leave of absence, all questions of whether a leave of absence taken by a particular Service Provider constitutes a termination of service, and all questions of whether a termination of service of a particular Service Provider resulted from discharge for Cause.  For the purpose of clarification, for such purpose the Board shall be the Administrator of any Award granted to a Director who is not an Employee of the Company or any of its Subsidiaries hereunder, and the Board will therefore determine all matters and questions related to the termination of a Director who is not an Employee of the Company or any of its Subsidiaries as a Service Provider with respect to any Award granted to him or her hereunder;

(e)    determine the number of Awards to be granted and the number of Shares to which an Award will relate;

(f)    approve forms of agreement for use under the Plan, which need not be identical for each Service Provider;

(g)    determine the terms and conditions of any Awards granted hereunder (including, but not limited to, the exercise price, the time or times when Awards may be exercised (which may be based on performance criteria), any vesting acceleration or waiver of forfeiture restrictions and any restriction or limitation regarding any Awards or the Company Common Stock relating thereto) based in each case on such factors as the Administrator, in its sole discretion, shall determine;

(h)    prescribe, amend and rescind rules and regulations relating to the Plan, including rules and regulations relating to Subplans established for the purpose of satisfying applicable foreign laws;

(i)    determine whether, to what extent, and pursuant to what circumstances an Award may be settled in, or the exercise or purchase price of an Award may be paid in, cash, Company Common Stock, other Awards, or other property, or an Award may be canceled, forfeited or surrendered;

(j)    suspend or accelerate the vesting of any Award granted under the Plan;

(k)    construe and interpret the terms of the Plan and Awards granted pursuant to the Plan and

(l)    make all other decisions and determinations that may be required pursuant to the Plan or as the Administrator deems necessary or advisable to administer the Plan.

Section 12.3    Compensation, Professional Assistance, Good Faith Actions.  The Administrator may receive such compensation for its services hereunder as may be determined by the Board.  All expenses and liabilities incurred by the Administrator in connection with the administration of the Plan shall be borne by the Company.  The Administrator may employ attorneys, consultants, accountants, appraisers, brokers or other persons.  The Administrator, the Company and its officers and Directors shall be entitled to rely upon the advice, opinions or valuations of any such persons.  All actions taken and all interpretations, decisions and determinations made by the Administrator, in good faith shall be final and binding upon all Participants, the Company and all other interested persons.  The Administrator shall not be personally liable for any action, determination or interpretation made with respect to the Plan or the Awards, and the Administrator shall be fully protected by the Company with respect to any such action, determination or interpretation.

Section 12.4    Participants Based Outside the United States.  To conform with the provisions of local laws and regulations, or with local compensation practices and policies, in foreign countries in which the Company or any of its Subsidiaries or Affiliates operate, but subject to the limitations set forth herein regarding the maximum number of shares issuable hereunder and the maximum award to any single Participant, the Administrator may (i) modify the terms and conditions of Awards granted to Participants employed outside the United States ("Non-U.S. Awards"), (ii) establish subplans with such modifications as may be necessary or advisable under the circumstances ("Subplans") and (iii) take any action which it deems advisable to obtain, comply with or otherwise reflect any necessary governmental regulatory procedures, exemptions or approvals with respect to the Plan.  The Administrator's decision to grant Non-U.S. Awards or to establish Subplans is entirely voluntary, and at the complete discretion of the Administrator.  The Administrator may amend, modify or terminate any Subplans at any time, and such amendment, modification or termination may be made without prior notice to the Participants.  The Company, Subsidiaries, Affiliates and members of the Administrator shall not incur any liability of any kind to any Participant as a result of any change, amendment or termination of any Subplan at any time.  The benefits and rights provided under any Subplan or by any Non-U.S. Award (x) are wholly discretionary and, although provided by either the Company, a Subsidiary or Affiliate, do not constitute regular or periodic payments and (y) are not to be considered part of the Participant's salary or compensation under the Participant's employment with the Participant's local employer for purposes of calculating any severance, resignation, redundancy or other end of service payments, vacation, bonuses, long-term service awards, indemnification, pension or retirement benefits, or any other payments, benefits or rights of any kind.  If a Subplan is terminated, the Administrator may direct the payment of Non-U.S. Awards (or direct the deferral of payments whose amount shall be determined) prior to the dates on which payments would otherwise have been made, and, in the Administrator's discretion, such payments may be made in a lump sum or in installments.

## ARTICLE XIII.

## CHANGE IN CONTROL

Section 13.1    Accelerated Vesting and Payment.

(a)    Accelerated Vesting.  Unless the Administrator otherwise determines in the manner set forth in Section 13.1(b) or as otherwise provided in an Award Agreement, upon the occurrence of a Change in Control, (i) all Service Awards shall become immediately vested or exercisable and be settled in shares of Company Common Stock, (ii) each outstanding Performance Award with a Performance Cycle in progress at the time of the Change in Control shall be deemed to be earned and become vested and/or paid out in an amount equal to the product of (A) such Participant's target award opportunity with respect to such Performance Award for the Performance Cycle in question and (B) the percentage of Performance Goals achieved as of the date of the Change in Control (which Performance Goals shall be pro-rated, if necessary or appropriate, to reflect the portion of the Performance Cycle that has been completed), and all other Performance Awards shall be canceled and forfeited upon consummation of the Change in Control and (iii) shares of Company Common Stock underlying all Awards that are vested (as provided in this Section 13.1(a) or otherwise) shall be issued or released to the Participant holding such Award; provided, that, at the

discretion of the Administrator (as constituted immediately prior to the Change in Control), each Service Award may be canceled in exchange for an amount equal to the product of (A)(I) in the case of Options and Stock Appreciation Rights, the excess, if any, of the product of the Change in Control Price over the exercise price for such Award and (II) in the case of other such Awards, the Change in Control Price, multiplied by (B) the aggregate number of shares of Company Common Stock covered by such Award.  Notwithstanding the foregoing, the Administrator may, in its discretion, instead terminate any outstanding Options or Stock Appreciation Rights if either (x) the Company provides holders of such Options and Stock Appreciation Rights with reasonable advance notice to exercise their outstanding and unexercised Options and Stock Appreciation Rights, or (y) the Administrator reasonably determines that the Change in Control Price is equal to or less than the exercise price for such Options or Stock Appreciation Rights.

(b)  <u>Timing of Payments</u>.  Payment of any amounts calculated in accordance with Section 13.1(a) shall be made in cash or, if determined by the Administrator (as constituted immediately prior to the Change in Control), in shares of common stock of the new employer having an aggregate fair market value equal to such amount and shall be payable in full, as soon as reasonably practicable, but in no event later than 30 days, following the Change in Control. For purposes hereof, the fair market value of one share of common stock of the new employer shall be determined by the Administrator (as constituted immediately prior to the consummation of the transaction constituting the Change in Control), in good faith.

Section 13.2   Alternative Awards.  Notwithstanding Section 13.1, except as otherwise provided in an Award Agreement, no cancellation, termination, acceleration of exercisability or vesting, lapse of any restrictions or settlement or other payment shall occur with respect to any outstanding Award, if the Administrator (as constituted immediately prior to the consummation of the transaction constituting the Change in Control) reasonably determines, in good faith, with the approval of a majority of the members of the Leadership Team, prior to the Change in Control, that such outstanding Awards shall be honored or assumed, or new rights substituted therefor (such honored, assumed or substituted Award being hereinafter referred to as an "<u>Alternative Award</u>") by the new employer, <u>provided</u>, that any Alternative Award must:

(a)  provide the Participant (or each Participant in a class of Participants) with rights and entitlements substantially equivalent to or better than the rights, terms and conditions applicable under such Award, including, but not limited to, an identical or better exercise or vesting schedule and identical or better timing and methods of payment;

(b)  have substantially equivalent economic value to such Award (determined at the time of the Change in Control) and

(c)  have terms and conditions which provide that in the event that the Participant suffers an involuntary termination without Cause within two years following the Change in Control,

(i)  all outstanding Service Awards held by a terminated Participant shall become vested and exercisable and any restrictions on such outstanding Service Awards shall lapse and

(ii)  each outstanding Performance Award held by a terminated Participant with a Performance Cycle in progress at the time of both the Change in Control and the termination of employment shall be deemed to be earned and become vested and/or paid out in an amount equal to the product of (x) such Participant's target award opportunity with respect to such Award for the Performance Cycle in question and (y) the greater of the percentage of Performance Goals (which Performance Goals shall be pro-rated, if necessary or appropriate, to reflect the portion of the Performance Cycle that has been completed) achieved as of the date of the Change in Control and as of the last day of the fiscal quarter ended on or immediately prior to the date of Termination of Service. The portion of any Performance Award that does not vest in accordance with the preceding sentence shall immediately be forfeited and canceled without any payment therefor.

(iii)  <u>Payments</u>.  To the extent permitted under Section 14.14, all amounts payable hereunder shall be payable in full, as soon as reasonably practicable, but in no event later than 10 business days, following the Participant's termination of employment.

Section 13.3    Section 409A. Notwithstanding anything in Section 13.2, if any Award is subject to Section 409A of the Code and an Alternative Award would be deemed a non-compliant material modification (as defined in Section 409A of the Code) of such Award, then no Alternative Award shall be provided and such Award shall instead be treated as provided in Section 13.1.

Section 13.4    Pre-Public Offering Awards. The provisions of this Article XIII shall not apply to any Awards granted prior to a Public Offering unless expressly provided otherwise in the Award Agreement.

## ARTICLE XIV.

## OTHER PROVISIONS

Section 14.1    Changes in Company Common Stock; Disposition of Assets and Corporate Events.

(a)    In the event of any recapitalization (including a leveraged recapitalization), reclassification, stock split, extraordinary dividend, reverse stock split, reorganization, merger, consolidation, acquisition, disposition, split-up, spin-off, combination, repurchase, liquidation, dissolution, or sale, transfer, exchange or any disposition of all or substantially all of the capital stock or assets of the Company (including, but not limited to, an Equity Restructuring), exchange of Company Common Stock or other securities of the Company, issuance of warrants or other rights to purchase Company Common Stock or other securities of the Company, the acquisition or disposition of any material assets or business or other similar corporate transaction or event that affects the Company Common Stock (each, a "Corporate Event") such that an adjustment to the Awards or Plan is determined by the Administrator to be necessary in order to prevent dilution or enlargement of the benefits or potential benefits intended to be made available under the Plan or with respect to an Award, then the Administrator shall, in such manner as it may deem equitable, adjust any or all of:

(i)    the number and kind of Shares (or other securities or property) with respect to which an Award may be granted under the Plan (including, but not limited to, adjustments of the limitations in Section 2.1 on the maximum number and kind of Shares which may be issued);

(ii)    the number and kind of Shares (or other securities or property) subject to outstanding Awards;

(iii)    the grant or exercise or base price per Share for any outstanding Awards under the Plan;

(iv)    the terms and conditions of any outstanding Awards (including, without limitation, any applicable financial or other Performance Goals) or

(v)    make such other provision with respect to the holder or holders of outstanding Awards (which may include, without limitation, provision for dividend equivalents or other compensation inside or outside of the Plan);

it being understood that any such adjustment or other provision shall be implemented in such manner as the Administrator determines is necessary to preserve the economic value represented by the Award immediately prior to such event (except that, for the avoidance of doubt, economic value of any Option or SAR need not reflect any value other than the spread value of such Award at such time) and not cause the Award to become subject to the provisions of or any additional taxes, interest or penalties imposed by Section 409A of the Code. All determinations and adjustments made by the Administrator in good faith pursuant to this Section 14.1(a) shall be final and binding on the affected Participants and the Company.

(b)    Subject to Section 14.14, upon the occurrence of a Corporate Event, the Administrator is hereby authorized to take any one or more of the following actions whenever the Administrator determines that such action is necessary in order to (x) prevent dilution or enlargement of the benefits or potential benefits

22

intended to be made available under the Plan or with respect to any Award under this Plan, (y) facilitate such Corporate Event or (z) give effect to such changes in laws, regulations or accounting principles:

      (i)    The Administrator may provide, on such terms and conditions as it deems appropriate, either by the terms of the applicable Award Agreement or by action taken prior to the occurrence of such Corporate Event, and either automatically or upon the Participant's request, for either (A) the purchase of any outstanding Award for an amount of cash, securities, or other property equal to the amount that could have been attained upon the exercise of the portion of such Award that was vested and exercisable (and such additional portion of the Award as the Administrator may determine) immediately prior to the occurrence of such Corporate Event or (B) the replacement of such vested (and other) portion of such Award with other rights or property selected by the Administrator in its sole discretion;

      (ii)    In its sole discretion, the Administrator may provide, either by the terms of the applicable Award Agreement or by action taken prior to the occurrence of such Corporate Event, that, if, as of the date of the occurrence of such Corporate Event, the Administrator determines in good faith that no amount would have been obtained upon the vesting or exercise of the Award, then the Award (or any portion thereof) will terminate upon the occurrence of such Corporate Event and cannot vest, be exercised or become payable after such Corporate Event;

      (iii)    The Administrator may provide, on such terms and conditions as it deems appropriate, either by the terms of the applicable Award Agreement or by action taken prior to the occurrence of such Corporate Event, that for a specified period of time prior to such Corporate Event, such Award shall be exercisable as to all Shares covered thereby or a specified portion of such Shares, notwithstanding anything to the contrary in (A) Section 4.2 or (B) the provisions of the applicable Award Agreement;

      (iv)    In its sole discretion and on such terms and conditions as it deems appropriate, the Administrator may provide, either by the terms of the applicable Award Agreement or by action taken prior to the occurrence of such Corporate Event, that upon such Corporate Event, such Award (or any portion thereof) may be assumed by the successor or survivor corporation, or a parent or subsidiary thereof, or shall be substituted for by similar options, rights or Awards covering the stock of the successor or survivor corporation, or a parent or subsidiary thereof, with appropriate adjustments as to the number and kind of Shares and prices; and

      (v)    The Administrator may make adjustments in the number and type of Shares (or other securities or property) subject to the Plan and outstanding Awards (or any portion thereof) and/or in the terms and conditions of (including the exercise price), and the criteria included in, outstanding Awards and Awards which may be granted in the future.

      (c)    With respect to Awards granted prior to a Public Offering, in connection with the occurrence of any Equity Restructuring, and notwithstanding anything to the contrary in Section 14.1(a) and Section 14.1(b), the Administrator will equitably adjust each outstanding Award, which adjustments may include adjustments to the number and type of securities subject to each outstanding Award and/or the exercise price or grant price thereof, if applicable, the grant of new Awards to Participants, and/or the making of a cash payment to Participants, as the Administrator deems necessary to reflect such Equity Restructuring. The adjustments provided under this Section 14.1(c) shall be nondiscretionary and shall be final and binding on the affected Participant and the Company; provided that whether an adjustment is equitable shall be determined in the discretion of the Administrator.

      (d)    Any adjustment of an Award pursuant to Section 14.1 shall be effected in compliance with Section 409A of the Code.

      (e)    The Administrator may include such further provisions and limitations in any Award Agreement or Stockholders Agreement as it may deem equitable and in the best interests of the Company and its Subsidiaries.

      (f)    To the extent required by the terms of an Award Agreement, the Company shall notify the Participant prior to the date of a Corporate Event.

<u>Section 14.2</u>     <u>Transferability</u>.

(a)     <u>Awards Not Transferable</u>.  Unless otherwise agreed to in writing by the Administrator, no Award or interest or right therein or part thereof shall be liable for the debts, contracts or engagements of the Participant or his or her successors in interest or shall be subject to disposition by transfer, alienation, anticipation, pledge, encumbrance, assignment or any other means whether such disposition be voluntary or involuntary or by operation of law, by judgment, levy, attachment, garnishment or any other legal or equitable proceedings (including bankruptcy), and any attempted disposition thereof shall be null and void and of no effect; provided, however, that nothing in this Section 14.2 shall prevent transfers by will or by the applicable laws of descent and distribution.

(b)     <u>Transferability of Shares</u>.  Prior to the day that is one hundred eighty (180) days (or such shorter or longer period as determined by the managing underwriters to be appropriate in order to avoid a material adverse impact on marketability or price) after the consummation of a Public Offering, no Participant shall without the prior consent of the Administrator transfer any Shares issued pursuant to an Award except for (i) transfers to the Company, (ii) transfers (A) by gift to, or for the benefit of, any member or members of a Participant's immediate family (which shall include any spouse, or any lineal ancestor or descendant, niece, nephew, adopted child or sibling of him or her or such spouse, niece, nephew or adopted child), (B) to a trust under which the distribution of the Shares may be made only by such Participant and/or such Participant's immediate family or (C) to a partnership or limited liability company for the benefit of the immediate family of such Participant and the partners or members of which are only such Participant and such Participant's immediate family or (iii) any transfer of such Shares by a Participant to his or her heirs, executors or legatees by operation of law or court order upon the death or incapacity of such Participant (each such transfer, a "<u>Permitted Transfer</u>").

<u>Section 14.3</u>     <u>Amendment, Suspension or Termination of the Plan or Award Agreements</u>.

(a)     The Plan may be wholly or partially amended or otherwise modified, suspended or terminated at any time or from time to time by the Administrator; <u>provided that</u> without the approval by a majority of the shares entitled to vote at a duly constituted meeting of shareholders of the Company, no amendment or modification to the Plan may (i) except as otherwise expressly provided in Section 14.1, increase the number of shares of Stock subject to the Plan or the individual Award limitations specified in Section 2.2; (ii) modify the class of persons eligible for participation in the Plan or (iii) materially modify the Plan in any other way that would require shareholder approval under Applicable Law.

(b)     Except as provided by Section 14.1, neither the amendment, suspension nor termination of the Plan shall, without the consent of the holder of the Award, adversely alter or impair any rights or obligations under any Award theretofore granted.  Except as provided by Section 14.1, notwithstanding the foregoing, the Administrator at any time, and from time to time, may amend the terms of any one or more existing Award Agreements, <u>provided</u>, <u>however</u>, that the rights of a Participant under an Award Agreement shall not be adversely impaired without the Participant's written consent.  The Company shall provide a Participant with notice of any amendment made to such Participant's existing Award Agreement in accordance with the terms of this Section 14.3(b).

(c)     No Award may be granted during any period of suspension nor after termination of the Plan, and in no event may any Award be granted under this Plan after the expiration of ten (10) years from the Effective Date.

<u>Section 14.4</u>     <u>Application of Certain Provisions of the Stockholders Agreement to the Awards</u>.  The provisions of Section 12 of the Stockholders Agreement shall apply to all Awards granted pursuant to this Plan prior to a Public Offering, regardless of whether the Participant is a party to such agreement or whether any Shares have been issued.

<u>Section 14.5</u>     <u>Effect of Plan upon Other Award and Compensation Plans</u>.  The adoption of this Plan shall not affect any other compensation or incentive plans in effect for the Company or any of its Subsidiaries.  Nothing in this Plan shall be construed to limit the right of the Company or any of its Subsidiaries (a) to establish any other forms of incentives or compensation for Service Providers or (b) to grant or assume options or restricted stock other than

under this Plan in connection with any proper corporate purpose, including, but not by way of limitation, the grant or assumption of options or restricted stock in connection with the acquisition by purchase, lease, merger, consolidation or otherwise, of the business, stock or assets of any corporation, firm or association.

Section 14.6    At-Will Employment.  Nothing in the Plan, the Stockholders Agreement or any Award Agreement hereunder shall confer upon the Participant any right to continue as a Service Provider of the Company or any of its Subsidiaries or shall interfere with or restrict in any way the rights of the Company and any of its Subsidiaries, which are hereby expressly reserved, to discharge any Participant at any time for any reason whatsoever, with or without Cause, except to the extent expressly provided otherwise in a written employment or other agreement between the Participant and the Company or any of its Subsidiaries.

Section 14.7    Titles.  Titles are provided herein for convenience only and are not to serve as a basis for interpretation or construction of the Plan.

Section 14.8    Conformity to Securities Laws.  The Plan is intended to conform to the extent necessary with all provisions of the Securities Act and the Exchange Act and any and all regulations and rules promulgated under any of the foregoing, to the extent the Company, any of its Subsidiaries or any Participant is subject to the provisions thereof. Notwithstanding anything herein to the contrary, the Plan shall be administered, and Awards shall be granted and may be exercised, only in such a manner as to conform to such laws, rules and regulations. To the extent permitted by applicable law, the Plan and Awards granted hereunder shall be deemed amended to the extent necessary to conform to such laws, rules and regulations.

Section 14.9    Term of Plan.  The Plan originally became effective on November 19, 2008. The Plan, as amended and restated, shall become effective on the date that it is approved by the Board (the "Effective Date") and shall continue in effect, unless sooner terminated pursuant to Section 14.3, until the tenth anniversary of the Effective Date. The provisions of the Plan shall continue thereafter to govern all outstanding Awards.

Section 14.10    Governing Law.  To the extent not preempted by federal law, the Plan shall be construed in accordance with and governed by the laws of the State of Delaware regardless of the application of rules of conflict of law that would apply the laws of any other jurisdiction.

Section 14.11    Severability.  In the event any portion of the Plan or any action taken pursuant thereto shall be held illegal or invalid for any reason, the illegality or invalidity shall not affect the remaining parts of the Plan, and the Plan shall be construed and enforced as if the illegal or invalid provisions had not been included, and the illegal or invalid action shall be null and void.

Section 14.12    Governing Documents.  In the event of any contradiction between the Plan and any Award Agreement or any other written agreement between a Participant and the Company or any Subsidiary of the Company that has been approved by the Administrator, the terms of the Plan shall govern, unless it is expressly specified in such Award Agreement or other written document that a specific provision of the Plan shall not apply.

Section 14.13    Withholding Taxes.  In addition to any rights or obligations with respect to Withholding Taxes under the Plan or any applicable Award Agreement, the Company or any Subsidiary employing a Service Provider shall have the right to withhold from the Service Provider, or otherwise require the Service Provider or an assignee to pay, any Withholding Taxes arising as a result of grant, exercise, vesting or settlement of any Award or any other taxable event occurring pursuant to the Plan or any Award Agreement, including, but not limited to, to the extent permitted by law, the right to deduct any such Withholding Taxes from any payment of any kind otherwise due to the Service Provider or to take such other actions (including, but not limited to, withholding any Shares or cash deliverable pursuant to the Plan or any Award) as may be necessary to satisfy such Withholding Taxes; provided, however, that in the event that the Company withholds Shares issued or issuable to the Participant to satisfy the Withholding Taxes, the Company shall withhold a number of whole Shares having a Fair Market Value, determined as of the date of withholding, not in excess of the minimum of tax required to be withheld by law (or such lower amount as may be necessary to avoid liability award accounting); and provided, further, that with respect to any Award subject to Section 409A of the Code, in no event shall Shares be withheld pursuant to this Section 14.13 (other than upon or immediately prior to settlement

in accordance with the Plan and the applicable Award Agreement) other than to pay taxes imposed under the U.S. Federal Insurance Contributions Act (FICA) and any associated U.S. federal withholding tax imposed under Section 3401 of the Code, and in no event shall the value of such Shares (other than upon immediately prior to settlement) exceed the amount of the tax imposed under FICA and any associated U.S. federal withholding tax imposed under Section 3401 of the Code. The Participant shall be responsible for all Withholding Taxes and other tax consequences of any Award granted under this Plan.

    Section 14.14   Section 409A. To the extent that the Administrator determines that any Award granted under the Plan is subject to Section 409A of the Code, the Award Agreement evidencing such Award shall incorporate the terms and conditions required by Section 409A of the Code. To the extent applicable, the Plan and Award Agreements shall be interpreted in accordance with Section 409A of the Code and Department of Treasury regulations and other interpretive guidance issued thereunder, including without limitation any such regulations or other guidance that may be issued after the adoption of the Plan. In the case of any "nonqualified deferred compensation" (within the meaning of Section 409A) that may be treated as payable in the form of "a series of installment payments," as defined in Treasury Regulation Section 1.409A-2(b)(2)(iii), a Participant's or designated beneficiary's right to receive such payments shall be treated as a right to receive a series of separate payments for purposes of such Treasury Regulation. Notwithstanding any provision of the Plan to the contrary, in the event that following the adoption of the Plan, the Administrator determines that any Award may be subject to Section 409A of the Code and related regulations and Department of Treasury guidance (including such Department of Treasury guidance as may be issued after the adoption of the Plan), the Administrator may adopt such amendments to the Plan and the applicable Award Agreement or adopt other policies and procedures (including amendments, policies and procedures with retroactive effect), or take any other actions, that the Administrator determines are necessary or appropriate to (a) exempt the Award from Section 409A of the Code and/or preserve the intended tax treatment of the benefits provided with respect to the Award, (b) comply with the requirements of Section 409A of the Code and related Department of Treasury guidance or (c) comply with any correction procedures available with respect to Section 409A of the Code. Notwithstanding anything else contained in this Plan, any Award Agreement or the Stockholder's Agreement to the contrary, if a Service Provider is a Specified Employee (under any Company Specified Employee policy in effect at the time of the Service Provider's Separation from Service (as defined below) or, if no such policy is in effect, as defined in Section 409A of the Code) any payment required to be made to a Service Provider hereunder upon or following his or her Separation from Service (as such term is defined in Section 409A of the Code) shall be delayed until after the six-month anniversary of the Service Provider's Separation from Service to the extent necessary to comply with, and avoid imposition on such Service Provider of any tax penalty imposed under, Section 409A of the Code. Should payments be delayed in accordance with the preceding sentence, the accumulated payment that would have been made but for the period of the delay shall be paid in a single lump sum during the ten-day period following the six-month anniversary of the Separation from Service. Notwithstanding the foregoing, neither the Company nor the Administrator, nor any of the Company's directors, officers or employees shall have any liability to any person in the event Section 409A applies to any payment or right under this Plan in a manner that results in adverse tax consequences for the Participant or any of his beneficiaries or transferees.

    Section 14.15   Notices. Except as provided otherwise in an Award Agreement, all notices and other communications required or permitted to be given under this Plan or any Award Agreement shall be in writing and shall be deemed to have been given if delivered personally, sent by email or any other form of electronic transfer approved by the Administrator, sent by certified or express mail, return receipt requested, postage prepaid, or by any recognized international equivalent of such delivery, (i) in the case of notices and communications to the Company, to 8283 Greensboro Drive, McLean, VA 22102 to the attention of the Law Department or (ii) in the case of a Participant, to the last known address, or email address or, where the individual is an employee of the Company or one of its subsidiaries, to the individual's workplace address or email address or by other means of electronic transfer acceptable to the Administrator. All such notices and communications shall be deemed to have been received on the date of delivery, if sent by email or any other form of electronic transfer, at the time of dispatch or on the third business day after the mailing thereof.



**DLA Piper LLP (US)**
500 Eighth Street, NW
Washington, DC 20004
www.dlapiper.com

Benjamin S. Boyd
benjamin.boyd@dlapiper.com
T   202.799.4502
F   202.799.5502

April 17, 2019

**VIA HAND DELIVERY**

Clerk of Court
Circuit Court of Fairfax County
4110 Chain Bridge Road
Fairfax, VA 22030

**2 0 1 9   0 5 4 4 6**

Re:  *Booz Allen Hamilton Holding v. Ramez Shehadi and Walid Fayad*

Dear Clerk:

Enclosed for filing please find an original and two service copies of the Complaint and Affidavits for Service of Process on the two non-resident defendants through the Secretary of the Commonwealth.  Checks for the filing fee and service fees are also enclosed.  Finally, we have enclosed a self-addressed stamped envelope for notifying us of the date the clerk of court verifies the filing of the certificate of compliance by the Secretary of the Commonwealth.

Thank you for your assistance in this matter.  Please do not hesitate to contact me should any issue arise with the filing or service.

Very Truly Yours,

**DLA Piper LLP (US)**

Benjamin S. Boyd

# EXHIBIT B

COPY

**AFFIDAVIT FOR SERVICE OF PROCESS ON THE SECRETARY OF THE COMMONWEALTH**

Case No. .................... 2019-05446

Commonwealth of Virginia    VA. CODE §§ 8.01-301, -310, -329; 55-218.1; 57-51

.................... FAIRFAX COUNTY .................... Circuit Court

| BOOZ ALLEN HAMILTON HOLDING CORPORATION | v. | RAMEZ TANNOUS SHEHADI |
|---|---|---|
| | | Afeiche building, 2nd Floor, Edde Street, Hamra |
| | | Beirut, Lebanon |

TO THE PERSON PREPARING THIS AFFIDAVIT: You must comply with the appropriate requirements listed on the back of this form.

Attachments:    [•] Summons and Complaint    [ ] Notice
                                             [ ] ....................

FILED
APR 17 2019
JOHN T. FREY
Clerk of the Circuit Court
of Fairfax County, VA

I, the undersigned Affiant, state under oath that

[x] the above-named defendant    [ ]
    whose last known address is    [x] same as above [ ] ....................

1.  [x] is a non-resident of the Commonwealth of Virginia or a foreign corporation and Virginia Code § 8.01-328.1
    applies (see NON-RESIDENCE GROUNDS REQUIREMENT on page 2).

2.  [ ] is a person whom the party seeking service, after exercising due diligence, has been unable to locate (see DUE DILIGENCE
    REQUIREMENT ON BACK)

.................... is the hearing date and time on the attached process or notice (if applicable).

April 18, 2019
DATE

[ ] PARTY [X] PARTY'S ATTORNEY [ ] PARTY'S AGENT [ ] PARTY'S REGULAR AND *BONA FIDE* EMPLOYEE

State of DISTRICT COLUMBIA

[x] City [ ] County of .................... WASHINGTON D.C.

Acknowledged, subscribed and sworn to before me this day by BEN BOYD

April 18 2019
DATE                                                PRINT NAME OF SIGNATORY

[ ] CLERK    [ ] MAGISTRATE    [X] NOTARY PUBLIC    Margot Flinn

Notary Registration No. .......... NA .......... My commission expires: FEB. 14, 2024

[X] Verification by the clerk of court of the date of filing of the certificate of compliance is requested. A self-addressed stamped envelope was
provided to the clerk at the time of filing this Affidavit.

NOTICE TO THE RECIPIENT from the Office of the Secretary of the Commonwealth of Virginia:
    You are being served with this notice and attached pleadings under Section 8.01-329 of the Code of Virginia which designates the Secretary
    of the Commonwealth as statutory agent for Service of Process. The Secretary of the Commonwealth's ONLY responsibility is to mail, by
    certified mail, return receipt requested, the enclosed papers to you. If you have any questions concerning these documents, you may wish to
    seek advice from a lawyer.
SERVICE OF PROCESS IS EFFECTIVE ON THE DATE WHEN SERVICE IS MADE ON THE SECRETARY OF THE COMMONWEALTH.

**CERTIFICATE OF COMPLIANCE**

I, the undersigned, Clerk in the Office of the Secretary of the Commonwealth, hereby certify the following:

1.  On .......... MAY 1 0 2019 .......... , legal service in the above-styled case was made upon the Secretary of the
    Commonwealth, as statutory agent for persons to be served in accordance with Section 8.01-329 of the Code of Virginia, as amended.

2.  On .......... MAY 2 3 2019 .......... , papers described in the Affidavit and a copy of this Affidavit were forwarded by
    certified mail, return receipt requested, to the party designated to be served with process in the Affidavit.

SERVICE OF PROCESS CLERK, DESIGNATED
BY THE AUTHORITY OF THE SECRETARY OF THE COMMONWEALTH

# EXHIBIT C

# AFFIDAVIT FOR SERVICE OF PROCESS ON THE SECRETARY OF THE COMMONWEALTH

Case No. .......... ᵒ⁹ 05446

Commonwealth of Virginia    VA. CODE §§ 8.01-301, -310, -329; 55-218.1; 57-51

FAIRFAX COUNTY

BOOZ ALLEN HAMILTON HOLDING CORPORATION        v.        WALID FAYAD

Ghanoum Villa, Ground Floor, Bliss Street

Beirut, Lebanon

TO THE PERSON PREPARING THIS AFFIDAVIT: You must comply with the appropriate requirements listed on the back of this form.

| Attachments: | [×] Summons and Complaint | [ ] Notice |
| | | [ ] |

I, the undersigned Affiant, state under oath that
[×] the above-named defendant    [ ] ............................................................
whose last known address is    [×] same as above [ ] ............................................................

1. [×] is a non-resident of the Commonwealth of Virginia or a foreign corporation and Virginia Code § 8.01-328.1(A) applies (see NON-RESIDENCE GROUNDS REQUIREMENT on page 2).

2. [ ] is a person whom the party seeking service, after exercising due diligence, has been unable to locate (see DUE DILIGENCE REQUIREMENT ON BACK)

............................................................ is the hearing date and time on the attached process or notice (if applicable).

_April 12 2019_ ............................................................

[ ] PARTY   [×] PARTY'S ATTORNEY   [ ] PARTY'S AGENT   [ ] PARTY'S REGULAR AND *BONA FIDE* EMPLOYEE

State of _COLUMBIA_    [ ] City [×] County of _WASHINGTON_

Acknowledged, subscribed and sworn to before me this day by _Ben Boyd_

DATE    PRINT NAME OF SIGNATORY

[ ] CLERK    [ ] MAGISTRATE    [×] NOTARY PUBLIC

Notary Registration No. ..........N/A.......... My commission expires: 2/14/24

[ ] Verification by the clerk of court of the date of filing of the certificate of compliance is requested. A self-addressed stamped envelope was provided to the clerk at the time of filing this Affidavit.

NOTICE TO THE RECIPIENT from the Office of the Secretary of the Commonwealth of Virginia:
You are being served with this notice and attached pleadings under Section 8.01-329 of the Code of Virginia which designates the Secretary of the Commonwealth as statutory agent for Service of Process. The Secretary of the Commonwealth's ONLY responsibility is to mail, by certified mail, return receipt requested, the enclosed papers to you. If you have any questions concerning these documents, you may wish to seek advice from a lawyer.
SERVICE OF PROCESS IS EFFECTIVE ON THE DATE WHEN SERVICE IS MADE ON THE SECRETARY OF THE COMMONWEALTH.

## CERTIFICATE OF COMPLIANCE

I, the undersigned, Clerk in the Office of the Secretary of the Commonwealth, hereby certify the following:

1. On MAY 1 0 2019 .........., legal service in the above-styled case was made upon the Secretary of the Commonwealth, as statutory agent for persons to be served in accordance with Section 8.01-329 of the Code of Virginia, as amended.

2. On MAY 2 3 2019 .........., papers described in the Affidavit and a copy of this Affidavit were forwarded by certified mail, return receipt requested, to the party designated to be served with process in the Affidavit.

SERVICE OF PROCESS CLERK, DESIGNATED
BY THE AUTHORITY OF THE SECRETARY OF THE COMMONWEALTH

FORM CC-1418 (MASTER, PAGE ONE OF TWO) 07/13

# EXHIBIT D

VIRGINIA:   IN THE CIRCUIT COURT OF FAIRFAX COUNTY

BOOZ ALLEN HAMILTON
HOLDING CORPORATION,

                Plaintiff,

    v.

RAMEZ TANNOUS SHEHADI
and
WALID FAYAD,
                Defendants.

Case No: 2019 05446

**FILED**
COURT SE...

2019 JUN 19  PM

JOHN ....
CLERK. CIRCUIT
FAIRFAX, V/

## <u>NOTICE OF SPECIAL AND LIMITED APPEARANCE</u>

PLEASE NOTE AND ENTER my special and limited appearance as counsel of record in the above-captioned matter for Defendant Ramez Tannous Shehadi ("Defendant Shehadi"). The purpose of this special and limited appearance is to question and object to the jurisdiction of this Court.[1]  I certify that I am admitted to practice before this Court.

---

[1]  Defendant Shehadi anticipates that he will assert additional defenses, including but not limited to, defenses regarding improper venue and insufficient service of process.  Defendant Shehadi preserves, and does not waive, such defenses.

Dated: this 19th day of June, 2019

Respectfully submitted,

By: _____

B. PATRICE CLAIR
Virginia Bar No. 80225
FORD & HARRISON LLP
1300 19th Street, N.W., Suite 420
Washington, DC 20036
Telephone: (202) 719-2000
Facsimile: (202) 719-2077
pclair@fordharrison.com

*Attorney for Defendant*
*Ramez Tannous Shehadi*

## CERTIFICATE OF SERVICE

I hereby certify that, on this 19th day of June 2019, I caused a true and accurate copy of the

foregoing NOTICE OF SPECIAL AND LIMITED APPEARANCE to be served, via first class

United States mail, postage prepaid, upon:

Benjamin S. Boyd
Richard Kelley
DLA PIPER LLP
500 8th Street, NW
Washington, DC 20004

*Attorneys for Plaintiff*

B. PATRICE CLAIR
Virginia Bar No. 80225
FORD & HARRISON LLP
1300 19th Street, N.W., Suite 420
Washington, DC 20036
Telephone: (202) 719-2000
Facsimile: (202) 719-2077
pclair@fordharrison.com

*Attorney for Defendant*
*Ramez Tannous Shehadi*

WSACTIVELLP:10592296.2

2

Dated:  this 25th day of June 2019.          Respectfully submitted,

By: _____

B. PATRICE CLAIR
Virginia Bar No. 80225
FORD & HARRISON LLP
1300 19th Street, N.W., Suite 420
Washington, DC 20036
Telephone: (202) 719-2000
Facsimile: (202) 719-2077

*Attorney for Defendant Walid Fayad*

## CERTIFICATE OF SERVICE

I hereby certify that, on this 25th day of June 2019, I caused a true and accurate copy of

the foregoing NOTICE OF SPECIAL AND LIMITED APPEARANCE to be served, via first class

United States mail, postage prepaid, upon:

Benjamin S. Boyd
Richard Kelley
DLA PIPER LLP
500 8th Street, NW
Washington, DC 20004

*Attorneys for Plaintiff*

_____

B. Patrice Clair
Virginia Bar No. 80225
FORD & HARRISON LLP
1300 19th Street, N.W., Suite 420
Washington, DC 20036
Telephone: (202) 719-2000
Facsimile: (202) 719-2077

*Attorney for Defendant Walid Fayad*

WSACTIVELLP:10607918.1

# EXHIBIT E

VIRGINIA:   IN THE CIRCUIT COURT OF FAIRFAX COUNTY

FILED
COURT SERVICES

2019 JUN 19  PM 1:57

JOHN T. FREY
CLERK, CIRCUIT COURT
FAIRFAX, VA

BOOZ ALLEN HAMILTON
HOLDING CORPORATION,

Plaintiff,

v.

RAMEZ TANNOUS SHEHADI
and
WALID FAYAD,

Defendants.

Case No: 2019 05446

## CONSENT MOTION FOR EXTENSION OF TIME FOR DEFENDANT SHEHADI TO ANSWER OR OTHERWISE RESPOND TO PLAINTIFF'S COMPLAINT

Defendant Ramez Tannous Shehadi ("Defendant Shehadi"), by and through his undersigned counsel appearing by special and limited appearance, and, pursuant to Rules 1:9 and 4:15 of the Rules of the Supreme Court of Virginia, moves this Court for entry of an Order extending his time to answer or otherwise respond to the Complaint filed by Plaintiff Booz Allen Hamilton Holding Corporation ("Plaintiff") for fourteen (14) days up to and including July 3, 2019.  In support of this Consent Motion, Defendant Shehadi states as follows:

1.      On or about April 17, 2019, Plaintiff filed its Complaint with this Court, claiming Defendants breached certain alleged contractual obligations to Plaintiff.[1]

2.      On or about June 17, 2019, Defendant Shehadi learned of the above-caption action and retained counsel in this matter the following day.

3.      Defendant Shehadi does not reside in the United States and never received a copy of the Summons or Complaint as a result of Plaintiff's service efforts.  As such, Defendant anticipates that, among other defenses, it will challenge the service of process.  Nevertheless,

---

[1] Upon information and belief, Defendant Fayad has not been served with this action.

1

pursuant to VA ST § 8.01-329 (C) (3) and Va. Sup. Ct. R. 3:8(a), Defendant Shehadi's deadline for answering or otherwise responding to the Complaint may be June 19, 2019.

4.      Therefore, out of an abundance of caution, Defendant Shehadi seeks to extend the deadline for answering or otherwise responding to Plaintiff's Complaint until July 3, 2019 to allow counsel adequate time to familiarize itself with the allegations contained in Plaintiff's Complaint and Defendant Shehadi's responses and defenses thereto and to prepare and file an appropriate response on behalf of Defendant Shehadi.

5.      On June 18, 2019, one of the undersigned counsel's colleagues conferred with Plaintiff's counsel regarding this extension of time to answer or otherwise respond to Plaintiff's Complaint.  Plaintiff's counsel consents to, and does not object to, this extension.

6.      This extension will not delay or interfere with any proceedings in this matter, as a Scheduling Conference with the Court has not yet been scheduled.

7.      A proposed Order is attached.

WHEREFORE, Defendant Shehadi respectfully requests that this Court to grant this Consent Motion and to enter an Order permitting Defendant Shehadi to answer or otherwise respond to Plaintiff's Complaint on or before July 3, 2019.

Dated:  this 19th day of June, 2019          Respectfully submitted,

By:_____

B. PATRICE CLAIR
Virginia Bar No. 80225
FORD & HARRISON LLP
1300 19th Street, N.W., Suite 420
Washington, DC 20036
Telephone: (202) 719-2000
Facsimile: (202) 719-2077
pclair@fordharrison.com

*Attorney for Defendant*
*Ramez Tannous Shehadi*

3

## **CERTIFICATE OF SERVICE**

I hereby certify that, on this 19th day of June 2019, I caused a true and accurate copy of the foregoing CONSENT MOTION FOR EXTENSION OF TIME FOR DEFENDANT SHEHADI TO ANSWER OR OTHERWISE RESPOND TO PLAINTIFF'S COMPLAINT to be served, via first class United States mail, postage prepaid, upon:

Benjamin S. Boyd
Richard Kelley
DLA PIPER LLP
500 8th Street, NW
Washington, DC 20004

*Attorneys for Plaintiff*

B. PATRICE CLAIR
Virginia Bar No. 80225
FORD & HARRISON LLP
1300 19th Street, N.W., Suite 420
Washington, DC 20036
Telephone: (202) 719-2000
Facsimile: (202) 719-2077
pclair@fordharrison.com

*Attorney for Defendant*
*Ramez Tannous Shehadi*

WSACTIVELLP:10593197.3

4

VIRGINIA:   IN THE CIRCUIT COURT OF FAIRFAX COUNTY

FILED
COURT SERVICES

2019 JUN 19 PM 1: 56

JOHN T. FREY
CLERK, CIRCUIT COURT
FAIRFAX, VA

BOOZ ALLEN HAMILTON
HOLDING CORPORATION,

                                    Plaintiff,

        v.                                              Case No: 2019 05446

RAMEZ TANNOUS SHEHADI
and
WALID FAYAD,
                                    Defendants.

## AGREED ORDER

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

On or about April 17, 2019, Plaintiff filed its Complaint with this Court.  Pursuant to VA ST § 8.01-329 (C) (3) and Va. Sup. Ct. R. 3:8(a), Defendant Shehadi's deadline for answering or otherwise responding to the Complaint may be June 19, 2019.

Counsel for parties have conferred and agreed to a brief extension of due.  Accordingly, upon consideration of the accompanied Consent Motion for Extension of Time For Defendant Shehadi to Answer or Otherwise Respond to Plaintiff's Complaint, it is hereby, for good cause shown, ORDERED that:

1.      Defendant Shehadi's Motion is GRANTED; and

2.      Defendant Shehadi's response to Plaintiff's Complaint shall be filed on or before July 3, 2019.

IT IS SO ORDERED.


DATED: _____          _____

                                 Judge _____


Copies to:

        Benjamin S. Boyd
        Richard Kelley
        DLA PIPER LLP
        500 8th Street, NW
        Washington, DC 20004

        *Attorneys for Plaintiff*


        B. Patrice Clair
        FORD & HARRISON LLP
        1300 19th Street, N.W., Suite 420
        Washington, DC 20036
        *Attorney for Defendant Shehadi*


WSACTIVELLP:10593321.1

Copies to:

Benjamin S. Boyd
Richard Kelley
DLA PIPER LLP
500 8th Street NW
Washington, DC 20004

*Attorneys for Plaintiff*


B. Patrice Clair
Virginia Bar No. 80225
FORD & HARRISON LLP
1300 19th Street, N.W., Suite 420
Washington, DC 20036

*Attorney for Defendant Walid Fayad*


WSACTIVELLP:10607945.1

VIRGINIA:   IN THE CIRCUIT COURT OF FAIRFAX COUNTY

FILED
COURT SERVICES

2019 JUN 25  PM 1: 42

JOHN T. FREY
CLERK, CIRCUIT COURT
FAIRFAX, VA

BOOZ ALLEN HAMILTON
HOLDING CORPORATION,

　　　　　　　　　　Plaintiff,

　　　v.

Case No: 2019 05446

RAMEZ TANNOUS SHEHADI
and
WALID FAYAD,

　　　　　　　　　　Defendants.

## AGREED ORDER

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

On or about April 17, 2019, Plaintiff filed its Complaint with this Court. Pursuant to VA ST § 8.01-329(c)(3) and Va. Sup. Ct. R. 3:8(a), Defendant Fayad's deadline for answering or otherwise responding to the Complaint may have been June 19, 2019.

Counsel for parties have conferred and agreed to a brief extension of time due to counsel's recent retention in this matter.  Accordingly, for good cause shown, IT IS HEREBY ORDERED that Defendant Fayad shall have up to and including July 3, 2019 to answer or otherwise respond to Plaintiff's Complaint.

IT IS SO ORDERED.

DATED: _____     _____

　　　　　　　　　　Judge _____

1

SEEN AND AGREED:

B. Patrice Clair, Esq.
Virginia Bar No. 80225
FORDHARRISON LLP
1300 19th Street, NW, Suite 420
Washington, DC 20036
Telephone: (202) 719-2000
Facsimile: (202) 719-2077
E-mail: pclair@fordharrison.com
*Counsel for Defendant Fayad*

SEEN AND AGREED:

Benjamin S. Boyd, Esq.
Virginia Bar No. 28427
Richard Kelley
Virginia Bar No. 90103
DLP PIPER LLP
500 8th Street, NW
Washington, D.C. 20004
Telephone: (202) 799-4000
Facsimile: (202) 799-5000
E-mail: Benjamin.boyd@dlapiper.com
*Counsel for Plaintiff*

2

Copies to:

Benjamin S. Boyd
Richard Kelley
DLA PIPER LLP
500 8th Street NW
Washington, DC 20004

*Attorneys for Plaintiff*


B. Patrice Clair
Virginia Bar No. 80225
FORD & HARRISON LLP
1300 19th Street, N.W., Suite 420
Washington, DC 20036

*Attorney for Defendant Walid Fayad*


WSACTIVELLP:10607945.1

3

# EXHIBIT F

VIRGINIA:    IN THE CIRCUIT COURT OF FAIRFAX COUNTY

BOOZ ALLEN HAMILTON HOLDING
CORPORATION

                  Plaintiff,

v.

                                        Case No.: 2019 05446

RAMEZ TANNOUS SHEHADI and
WALID FAYAD

                  Defendants.

## <u>NOTICE OF REMOVAL TO THE UNITED STATES DISTRICT COURT</u>

TO:     Clerk of Court
        Fairfax County Circuit Court
        4110 Chain Bridge Road
        Fairfax, Virginia 22030

        Benjamin S. Boyd
        Richard Kelley
        DLA PIPER LLP (US)
        500 8th Street NW
        Washington, D.C. 20004
        *Attorneys for Plaintiff*

      PLEASE TAKE NOTICE that on this 28th day of June 2019, Defendants Ramez Tannous Shehadi and Walid Fayad have filed a Notice of Removal of this action to the United States District Court for the Eastern District of Virginia, Alexandria Division.  A true and correct copy of the Notice of Removal is attached to this Notice as Exhibit 1.

1

Dated this 28th day of June 2019.          Respectfully submitted,

By: _____
B. PATRICE CLAIR
Virginia Bar No. 80225
FORD & HARRISON LLP
1300 19th Street, N.W., Suite 420
Washington, DC 20036
Telephone: (202) 719-2000
Facsimile: (202) 719-2077

*Attorney for Defendants*
*Ramez Tannous Shehadi &*
*Walid Fayad*

2

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of June 2019, I caused a true and accurate copy of

the foregoing NOTICE OF REMOVAL TO THE UNITED STATES DISTRICT COURT to be

served, via first class United States mail, postage prepaid, upon:

> Benjamin S. Boyd
> Richard Kelley
> DLA PIPER LLP (US)
> 500 8th Street NW
> Washington, D.C. 20004
> *Attorneys for Plaintiff*

> B. Patrice Clair
> Virginia Bar No. 80225
> FORD & HARRISON LLP
> 1300 19th Street, N.W., Suite 420
> Washington, DC 20036
> Telephone: (202) 719-2000
> Facsimile: (202) 719-2077
>
> *Attorney for Defendants*
> *Ramez Tannous Shehadi &*
> *Walid Fayad*

WSACTIVELLP:10596421.1

3