**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| BOOZ ALLEN HAMILTON HOLDING CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> RAMEZ TANNOUS SHEHADI and WALID FAYAD, <br><br> Defendants. | CIVIL ACTION NO. 1:19-cv-00869-CMH-JFA |

**DEFENDANTS' ANSWER, DEFENSES, AND COUNTERCLAIMS**
**AGAINST BOOZ ALLEN HAMILTON HOLDING CORPORATION, AND THIRD**
**PARTY COMPLAINT AGAINST BOOZ ALLEN HAMILTON INC.**

Defendants RAMEZ TANNOUS SHEHADI ("Shehadi") and WALID FAYAD ("Fayad") (collectively, "Defendants"), by and through their undersigned counsel, hereby set forth their answer and defenses to the Complaint[1] filed by Plaintiff Booz Allen Hamilton Holding Corporation ("Plaintiff" or "Booz Allen") and set forth their counterclaims and third-party complaint against Booz Allen and Booz Allen Hamilton Inc. ("BAH Inc."), as follows:

**FIRST DEFENSE – ANSWER**

Defendants respond to the enumerated allegations of the Complaint as follows:

**NATURE OF THE ACTION**

1.     Responding to Paragraph 1 of Plaintiff's Complaint, Defendants admit that Plaintiff purports to recover monies and equity interests retained by Defendants based on their alleged breach of contractual obligations and alleged scheme to "raid" Booz Allen of its

---

[1] On April 17, 2019, Plaintiff filed its Complaint in the Circuit Court of Fairfax County.  On June 28, 2019, Defendants filed their Notice of Removal, which removed the lawsuit to this Court.  (Dkt. No. 1.)

confidential information, key employees, and competitive advantage. Defendants further admit they were previously employed as senior executives by BAH Inc. Defendants deny that they engaged in any activity which breached the Plan (defined in Paragraph 2) and/or unlawful activity, and deny the remaining allegations contained in Paragraph 1 of Plaintiff's Complaint.

2.      Responding to Paragraph 2 of Plaintiff's Complaint, Defendants admit that, in connection with their employment as Executive Vice Presidents with BAH Inc., they received certain equity awards and stock options from Booz Allen as set forth in the Second Amended and Restated Equity Incentive Plan of Booz Allen Hamilton Holding Corporation (hereinafter, the "Plan"). Defendants further admit that the Plan constitutes a written agreement between Defendants and Booz Allen. Defendants deny the remaining allegations contained in Paragraph 2 of Plaintiff's Complaint.

3.      Responding to Paragraph 3 of Plaintiff's Complaint, Defendants admit that they received certain grants and awards of restricted stock, units, stock options, and other equity from Booz Allen pursuant to the Plan. Defendants further admit that, by virtue of their positions, they had access to certain confidential and/or proprietary information of BAH Inc. Finally, Defendants admit that they were offered employment in or about April 2014 and commenced their employment in or about June 2014. Defendants deny the remaining allegations contained in Paragraph 3 of Plaintiff's Complaint.

4.      Defendants deny the allegations set forth in Paragraph 4 of Plaintiff's Complaint.

5.      Defendants deny the allegations set forth in Paragraph 5 of Plaintiff's Complaint.

6.      Responding to Paragraph 6 of Plaintiff's Complaint, Defendants admit that BAH Inc. terminated their employment on October 13, 2017. Defendants further admit that BAH Inc. claimed that Defendants' terminations were for "Cause." Defendants lack knowledge or

information sufficient to form a belief as to the remaining allegations contained in Paragraph 6 of Plaintiff's Complaint and, therefore, deny the same.

7.      Responding to Paragraph 7 of Plaintiff's Complaint, Defendants state the Plan speaks for itself and allegations contained in this Paragraph constitute a legal conclusion to which no response is required.   To the extent a response is required, Defendants deny the remaining allegations contained in Paragraph 7 of Plaintiff's Complaint.

8.      Responding to Paragraph 8 of Plaintiff's Complaint, Defendants admit that Plaintiff purports to seek the relief contain in this Paragraph.   Defendants deny that they engaged in any activity which breached the Plan and/or unlawful activity, and deny the remaining allegations contained in Paragraph 8 of Plaintiff's Complaint.

## PARTIES

9.      Responding to Paragraph 9 of Plaintiff's Complaint, Defendants admit that Booz Allen is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Virginia.   Defendants lack knowledge or information sufficient to form a belief as to the remaining allegations contained in Paragraph 9 of the Complaint and, therefore, deny the same.

10.     Responding to Paragraph 10 of Plaintiff's Complaint, Defendants admit that Shehadi is a citizen of Canada.   Defendants further admit that Shehadi is a former employee of BAH Inc.   Defendants deny the remaining allegations contained in Paragraph 10 of Plaintiff's Complaint.

11.     Responding to Paragraph 11 of Plaintiff's Complaint, Defendants admit that Fayad is a citizen of Lebanon.   Defendants further admit that Fayad is a former employee of

BAH Inc.  Defendants deny the remaining allegations contained in Paragraph 11 of Plaintiff's Complaint.

### JURISDICTION AND VENUE

12.     Responding to Paragraph 12 of Plaintiff's Complaint, Defendants admit that the instant Court has subject-matter jurisdiction over this action.  Defendants deny the remaining allegations contained in Paragraph 12 of Plaintiff's Complaint.

13.     Defendants deny the allegations set forth in Paragraph 13 of Plaintiff's Complaint.

14.     Defendants deny the allegations set forth in Paragraph 14 of Plaintiff's Complaint.

### FACTS

15.     Responding to Paragraph 15 of Plaintiff's Complaint, Defendants admit that BAH Inc. is a management and information technology consulting firm that provides certain consulting and other services outside of the United States.  Defendants lack knowledge or information sufficient to form a belief as to the remaining allegations contained in Paragraph 15 of the Complaint and, therefore, deny the same.

16.     Defendants admit the allegations set forth in Paragraph 16 of Plaintiff's Complaint.

17.     Responding to Paragraph 17 of Plaintiff's Complaint, Defendants lack knowledge or information sufficient to form a belief as to the allegations contained therein and, therefore, deny the same.

18.     Responding to Paragraph 18 of Plaintiff's Complaint, Defendants lack knowledge or information sufficient to form a belief as to the allegations contained therein and, therefore, deny the same.

19.     Responding to Paragraph 19 of Plaintiff's Complaint, Defendants lack knowledge or information sufficient to form a belief as to the allegations contained therein and, therefore, deny the same.

20.     Responding to Paragraph 20 of Plaintiff's Complaint, Defendants lack knowledge or information sufficient to form a belief as to the allegations contained therein and, therefore, deny the same.

21.     Responding to Paragraph 21 of Plaintiff's Complaint, Defendants lack knowledge or information sufficient to form a belief as to the allegations contained therein and, therefore, deny the same.

## A.     Defendants Join BAH Inc. as Executives after Heavily Negotiating Their Equity Compensation

22.     Responding to Paragraph 22 of Plaintiff's Complaint, Defendants admit that, in late 2013, BAH Inc. initiated contact and began negotiating with Defendants regarding their potential employment as senior executives for BAH Inc.'s office in Abu Dhabi, United Arab Emirates ("UAE").  Defendants deny the remaining allegations contained in Paragraph 22 of Plaintiff's Complaint.

23.     Responding to Paragraph 23 of Plaintiff's Complaint, Defendants admit they discussed equity compensation with employees of BAH Inc.  Defendants further admit that they met with BAH Inc. employees in Virginia on one or two occasions prior to their employment. Defendants deny that they engaged in negotiations with Booz Allen employees at Booz Allen's headquarters.   Defendants deny the remaining allegations contained in Paragraph 23 of Plaintiff's Complaint.

24.     Defendants deny the allegations set forth in Paragraph 24 of Plaintiff's Complaint.

25.     Responding to Paragraph 25 of Plaintiff's Complaint, Defendants admit that Shehadi and others discussed retention packages offered by BAH Inc. with BAH Inc. employees. Defendants deny the remaining allegations contained in Paragraph 25 of Plaintiff's Complaint.

26.     Responding to Paragraph 26 of Plaintiff's Complaint, Defendants admit that, in or about April 2014, they both accepted employment with BAH Inc. as Executive Vice Presidents based in BAH Inc.'s Abu Dhabi, UAE office, said employment to begin in June 2014. Defendants deny the remaining allegations contained in Paragraph 26 of Plaintiff's Complaint.

27.     Responding to Paragraph 27 of Plaintiff's Complaint, Defendants admit that they were entitled to receive certain awards of shares, stock options, and other forms of equity in Booz Allen as set forth in the Plan.  Defendants deny the remaining allegations contained in Paragraph 27 of Plaintiff's Complaint.

### B.     Defendants Voluntarily Agree to the Terms and Conditions of Plaintiff's Equity Incentive Plan Reserved for Key Employees and Executives

28.     Responding to Paragraph 28 of Plaintiff's Complaint, Defendants lack knowledge or information sufficient to form a belief as to the allegations contained therein and, therefore, deny the same.

29.     Responding to Paragraph 29 of Plaintiff's Complaint, Defendants state the Plan speaks for itself, although Plaintiff appears to cite, in full or part, portions of the Plan (which was attached as Exhibit A to the Complaint).  Defendants lack knowledge or information sufficient to form a belief as to the purpose of the Plan and, therefore, deny the same.  Defendants deny the remaining allegations contained in Paragraph 29 of Plaintiff's Complaint.

30.     Responding to Paragraph 30 of Plaintiff's Complaint, Defendants state the Plan speaks for itself, although Plaintiff appears to cite, in full or part, portions of the Plan (which was attached as Exhibit A to the Complaint).  Defendants lack knowledge or information sufficient to

form a belief as to the purpose of the Plan and, therefore, deny the same.  Defendants deny the remaining allegations contained in Paragraph 30 of Plaintiff's Complaint.

31.     Responding to Paragraph 31 of Plaintiff's Complaint, Defendants state the Plan speaks for itself, although Defendants admit that "Company" is defined in the Plan as "Booz Allen Hamilton Holding Corporation, a Delaware corporation, and any successor."  Defendants deny the remaining allegations contained in Paragraph 31 of Plaintiff's Complaint.

32.     Responding to Paragraph 32 of Plaintiff's Complaint, Defendants state the Plan speaks for itself and allegations contained in this Paragraph constitute a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the remaining allegations contained in Paragraph 32 of Plaintiff's Complaint.

33.     Responding to Paragraph 33 of Plaintiff's Complaint, Defendants lack knowledge or information sufficient to form a belief as to the allegations contained therein and, therefore, deny the same.

34.     Responding to Paragraph 34 of Plaintiff's Complaint, Defendants state the Plan speaks for itself and allegations contained in this Paragraph constitute a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the remaining allegations contained in Paragraph 34 of Plaintiff's Complaint.

35.     Responding to Paragraph 35 of Plaintiff's Complaint, Defendants state the Plan speaks for itself, although Plaintiff appears to cite, in full or part, portions of the Plan (which was attached as Exhibit A to the Complaint).  Defendants deny the remaining allegations contained in Paragraph 35 of Plaintiff's Complaint.

36.     Responding to Paragraph 36 of Plaintiff's Complaint, Defendants state the Plan speaks for itself and allegations contained in this Paragraph constitute a legal conclusion to

which no response is required.   To the extent a response is required, Defendants deny the remaining allegations contained in Paragraph 36 of Plaintiff's Complaint.

37.     Responding to Paragraph 37 of Plaintiff's Complaint, Defendants state the Plan speaks for itself and allegations contained in this Paragraph constitute a legal conclusion to which no response is required.   To the extent a response is required, Defendants deny the remaining allegations contained in Paragraph 37 of Plaintiff's Complaint.

38.     Responding to Paragraph 38 of Plaintiff's Complaint, Defendants state the Plan speaks for itself and allegations contained in this Paragraph constitute a legal conclusion to which no response is required.   To the extent a response is required, Defendants deny the remaining allegations contained in Paragraph 38 of Plaintiff's Complaint.

39.     Responding to Paragraph 39 of Plaintiff's Complaint, Defendants state the Plan speaks for itself and allegations contained in this Paragraph constitute a legal conclusion to which no response is required.   To the extent a response is required, Defendants deny the remaining allegations contained in Paragraph 39 of Plaintiff's Complaint.

40.     Responding to Paragraph 40 of Plaintiff's Complaint, Defendants state the Plan speaks for itself, although Plaintiff appears to cite, in full or part, portions of the Plan (which was attached as Exhibit A to the Complaint).   Defendants deny the remaining allegations contained in Paragraph 40 of Plaintiff's Complaint.

41.     Responding to Paragraph 41 of Plaintiff's Complaint, Defendants state the Plan speaks for itself and allegations contained in this Paragraph constitute a legal conclusion to which no response is required.   To the extent a response is required, Defendants deny the remaining allegations contained in Paragraph 41 of Plaintiff's Complaint.

42.     Responding to Paragraph 42 of Plaintiff's Complaint, Defendants state the Plan speaks for itself and allegations contained in this Paragraph constitute a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the remaining allegations contained in Paragraph 42 of Plaintiff's Complaint.

43.     Responding to Paragraph 43 of Plaintiff's Complaint, Defendants state the Plan speaks for itself, although Plaintiff appears to cite, in full or part, portions of the Plan (which was attached as Exhibit A to the Complaint).  Defendants deny the remaining allegations contained in Paragraph 43 of Plaintiff's Complaint.

44.     Responding to Paragraph 44 of Plaintiff's Complaint, Defendants state the Plan speaks for itself and allegations contained in this Paragraph constitute a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the remaining allegations contained in Paragraph 44 of Plaintiff's Complaint.

45.     Responding to Paragraph 45 of Plaintiff's Complaint, Defendants state the Plan speaks for itself, although Plaintiff appears to cite, in full or part, portions of the Plan (which was attached as Exhibit A to the Complaint).  Defendants deny the remaining allegations contained in Paragraph 45 of Plaintiff's Complaint.

46.     Responding to Paragraph 46 of Plaintiff's Complaint, Defendants state the Plan speaks for itself and allegations contained in this Paragraph constitute a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the remaining allegations contained in Paragraph 46 of Plaintiff's Complaint.

47.     Responding to Paragraph 47 of Plaintiff's Complaint, Defendants state the Plan speaks for itself and allegations contained in this Paragraph constitute a legal conclusion to

which no response is required.  To the extent a response is required, Defendants deny the remaining allegations contained in Paragraph 47 of Plaintiff's Complaint.

48.     Responding to Paragraph 48 of Plaintiff's Complaint, Defendants state the Plan speaks for itself and allegations contained in this Paragraph constitute a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the remaining allegations contained in Paragraph 48 of Plaintiff's Complaint.

49.     Responding to Paragraph 49 of Plaintiff's Complaint, Defendants state the Plan speaks for itself, although Defendants admit that "Cause" is defined in the Plan.  Defendants deny the remaining allegations contained in Paragraph 49 of Plaintiff's Complaint.

50.     Responding to Paragraph 50 of Plaintiff's Complaint, Defendants state the Plan speaks for itself, although Plaintiff appears to cite, in full or part, portions of the Plan (which was attached as Exhibit A to the Complaint).  Defendants deny the remaining allegations contained in Paragraph 50 of Plaintiff's Complaint.

51.     Responding to Paragraph 51 of Plaintiff's Complaint, Defendants state the Plan speaks for itself and allegations contained in this Paragraph constitute a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the remaining allegations contained in Paragraph 51 of Plaintiff's Complaint.

52.     Responding to Paragraph 52 of Plaintiff's Complaint, Defendants state the Plan speaks for itself and allegations contained in this Paragraph constitute a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the remaining allegations contained in Paragraph 52 of Plaintiff's Complaint.

53.     Responding to Paragraph 53 of Plaintiff's Complaint, Defendants state the Plan speaks for itself, although Plaintiff appears to cite, in full or part, portions of the Plan (which was

attached as Exhibit A to the Complaint). Defendants deny the remaining allegations contained in Paragraph 53 of Plaintiff's Complaint.

54.     Responding to Paragraph 54 of Plaintiff's Complaint, Defendants state the Plan speaks for itself, although Plaintiff appears to cite, in full or part, portions of the Plan (which was attached as Exhibit A to the Complaint). Defendants deny the remaining allegations contained in Paragraph 54 of Plaintiff's Complaint.

55.     Responding to Paragraph 55 of Plaintiff's Complaint, Defendants state the Plan speaks for itself and allegations contained in this Paragraph constitute a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the remaining allegations contained in Paragraph 55 of Plaintiff's Complaint.

56.     Responding to Paragraph 56 of Plaintiff's Complaint, Defendants state the Plan speaks for itself and allegations contained in this Paragraph constitute a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the remaining allegations contained in Paragraph 56 of Plaintiff's Complaint.

57.     Defendants admit the allegations set forth in Paragraph 57 of Plaintiff's Complaint.

### C.     Defendants Receive Lucrative Awards Subject to the Plan While Maintaining Business Contacts with Booz Allen's Headquarters

58.     Responding to Paragraph 58 of Plaintiff's Complaint, Defendants admit that, during their employment with BAH Inc., they participated in the Plan and were granted various equity awards thereunder. Defendants deny the remaining allegations contained in Paragraph 58 of Plaintiff's Complaint.

59.     Responding to Paragraph 59 of Plaintiff's Complaint, Defendants admit that, at some point during their employment, BAH Inc. provided them with a Second Amended and

Restated Equity Incentive Plan. Defendants deny the remaining allegations contained in Paragraph 59 of Plaintiff's Complaint.

60. Responding to Paragraph 60 of Plaintiff's Complaint, Defendants admit that the Second Amended and Restated Equity Incentive Plan was in effect at the time they were terminated by BAH Inc. Defendants lack knowledge or information sufficient to form a belief as to the remaining allegations contained in Paragraph 60 of the Complaint and, therefore, deny the same.

### i. Defendant Shehadi's Awards and Business Contacts With Booz Allen's Headquarters in McLean, Virginia

61. Defendants admit the allegations set forth in Paragraph 61 of Plaintiff's Complaint.

62. Defendants admit the allegations set forth in Paragraph 62 of Plaintiff's Complaint.

63. Defendants admit the allegations set forth in Paragraph 63 of Plaintiff's Complaint.

64. Defendants admit the allegations set forth in Paragraph 64 of Plaintiff's Complaint.

65. Defendants admit the allegations set forth in Paragraph 65 of Plaintiff's Complaint.

66. Defendants admit the allegations set forth in Paragraph 66 of Plaintiff's Complaint.

67. Defendants admit the allegations set forth in Paragraph 67 of Plaintiff's Complaint.

68.    Defendants admit the allegations set forth in Paragraph 68 of Plaintiff's Complaint.

69.    Defendants admit the allegations set forth in Paragraph 69 of Plaintiff's Complaint.

70.    Defendants admit the allegations set forth in Paragraph 70 of Plaintiff's Complaint.

71.    Defendants admit the allegations set forth in Paragraph 71 of Plaintiff's Complaint.

72.    Defendants admit the allegations set forth in Paragraph 72 of Plaintiff's Complaint.

73.    Responding to Paragraph 73 of Plaintiff's Complaint, Defendants admit that Shehadi's awards were generally accompanied by one or more written agreements, contracts, or other instruments or documents.  Defendants deny the remaining allegations contained in Paragraph 73 of Plaintiff's Complaint.

74.    Responding to Paragraph 74 of Plaintiff's Complaint, Defendants lack knowledge or information sufficient to form a belief as to the allegations contained therein and, therefore, deny the same.

75.    Responding to Paragraph 75 of Plaintiff's Complaint, Defendant Shehadi admits that he accepted certain awards via electronic mail and/or by utilizing a web-based system. Defendants lack knowledge or information sufficient to form a belief as to the remaining allegations contained in Paragraph 75 of the Complaint and, therefore, deny the same.

76.    Responding to Paragraph 76 of Plaintiff's Complaint, Defendant Shehadi admits that he communicated with individuals employed by BAH Inc. regarding certain awards.

Defendants lack knowledge or information sufficient to form a belief as to the remaining allegations contained in Paragraph 76 of the Complaint and, therefore, deny the same.

77.     Defendants admit the allegations set forth in Paragraph 77 of Plaintiff's Complaint.

78.     Responding to Paragraph 78 of Plaintiff's Complaint, Defendant Shehadi admits that he communicated with individuals employed by BAH Inc. regarding certain awards. Defendants deny the remaining allegations contained in Paragraph 78 of Plaintiff's Complaint.

79.     Responding to Paragraph 79 of Plaintiff's Complaint, Defendant Shehadi admits that, throughout his employment, he made rare visits to Virginia to meet with BAH Inc. employees.  Defendants deny the remaining allegations contained in Paragraph 79 of Plaintiff's Complaint.

80.     Responding to Paragraph 80 of Plaintiff's Complaint, Defendant Shehadi admits that, for a period of time, he owned a townhouse as an investment property in Vienna, Virginia. Defendants deny the remaining allegations contained in Paragraph 80 of Plaintiff's Complaint.

81.     Defendants deny the allegations set forth in Paragraph 81 of Plaintiff's Complaint. Specifically, Defendant Shehadi only visited the townhouse on one occasion prior to his ownership, and never during the period in which he owned the townhouse.

82.     Defendants deny the allegations set forth in Paragraph 82 of Plaintiff's Complaint.

83.     Defendants admit the allegations set forth in Paragraph 83 of Plaintiff's Complaint.

84.     Defendants deny the allegations set forth in Paragraph 84 of Plaintiff's Complaint.

85.     Responding to Paragraph 85 of Plaintiff's Complaint, Defendant Shehadi admits that, on rare occasion, he visited the United States.  Defendant Shehadi denies that he ever

visited his townhouse during the period of its ownership. Defendants deny the remaining allegations contained in Paragraph 85 of Plaintiff's Complaint.

86.     Responding to Paragraph 86 of Plaintiff's Complaint, Defendant Shehadi admits that he was an employee of BAH Inc. for a certain period of time at issue in this lawsuit. Defendants deny the remaining allegations contained in Paragraph 86 of Plaintiff's Complaint.

### ii.     Defendant Fayad's Awards and business Contacts With Booz Allen's Headquarters in McLean, Virginia

87.     Defendants admit the allegations set forth in Paragraph 87 of Plaintiff's Complaint.

88.     Defendants admit the allegations set forth in Paragraph 88 of Plaintiff's Complaint.

89.     Defendants admit the allegations set forth in Paragraph 89 of Plaintiff's Complaint.

90.     Defendants admit the allegations set forth in Paragraph 90 of Plaintiff's Complaint.

91.     Defendants admit the allegations set forth in Paragraph 91 of Plaintiff's Complaint.

92.     Defendants admit the allegations set forth in Paragraph 92 of Plaintiff's Complaint.

93.     Defendants admit the allegations set forth in Paragraph 93 of Plaintiff's Complaint.

94.     Defendants admit the allegations set forth in Paragraph 94 of Plaintiff's Complaint.

95. Defendants admit the allegations set forth in Paragraph 95 of Plaintiff's Complaint.

96. Responding to Paragraph 96 of Plaintiff's Complaint, Defendants admit that Shehadi's awards were generally accompanied by one or more written agreements, contracts, or other instruments or documents. Defendants deny the remaining allegations contained in Paragraph 96 of Plaintiff's Complaint.

97. Responding to Paragraph 97 of Plaintiff's Complaint, Defendants lack knowledge or information sufficient to form a belief as to the allegations contained therein and, therefore, deny the same.

98. Responding to Paragraph 98 of Plaintiff's Complaint, Defendant Fayad admits that he received notice of certain grant of stock options via e-mail. Defendants lack knowledge or information sufficient to form a belief as to the remaining allegations contained in Paragraph 98 of the Complaint and, therefore, deny the same.

99. Responding to Paragraph 99 of Plaintiff's Complaint, Defendant Fayad admits that he accepted certain awards via electronic mail and/or by utilizing a web-based system. Defendants lack knowledge or information sufficient to form a belief as to the remaining allegations contained in Paragraph 99 of the Complaint and, therefore, deny the same.

100. Defendants deny the allegations set forth in Paragraph 100 of Plaintiff's Complaint.

101. Responding to Paragraph 101 of Plaintiff's Complaint, Defendant Fayad admits that he sent e-mails to at least one individual regarding the Plan who, upon information and belief, was an employee of BAH Inc. Defendants deny the remaining allegations contained in Paragraph 101 of Plaintiff's Complaint.

102.     Responding to Paragraph 102 of Plaintiff's Complaint, Defendant Fayad admits that, on rare occasion, he traveled to Virginia to meet with BAH Inc. employees. Defendants deny the remaining allegations contained in Paragraph 102 of Plaintiff's Complaint.

103.     Responding to Paragraph 103 of Plaintiff's Complaint, Defendant Fayad admits that, on rare occasion, he traveled to the United States during the period of his employment. Defendants deny the remaining allegations contained in Paragraph 103 of Plaintiff's Complaint.

104.     Responding to Paragraph 104 of Plaintiff's Complaint, Defendant Fayad admits that he was an employee of BAH Inc. for a certain period of time at issue in this lawsuit. Defendants deny the remaining allegations contained in Paragraph 104 of Plaintiff's Complaint.

### D.     Defendants Secretly Plan an Illicit Scheme to Make Off with BAH Inc.'s Employees, Information, and Competitive Advantage for the Benefit of a Direct Competitor

105.     Responding to Paragraph 105 of Plaintiff's Complaint, Defendants admit that, by virtue of their positions, they had access to certain confidential and/or proprietary information of BAH Inc. with respect to parts of the Middle East region. Defendants deny the remaining allegations contained in Paragraph 105 of Plaintiff's Complaint.

106.     Responding to Paragraph 106 of Plaintiff's Complaint, Defendants admit that, by virtue of their positions as executives of BAH Inc., they had access to certain confidential and/or proprietary information of BAH Inc. with respect to parts of the Middle East region. Defendants deny the remaining allegations contained in Paragraph 106 of Plaintiff's Complaint.

107.     Responding to Paragraph 107 of Plaintiff's Complaint, Defendants admit that, by virtue of their positions, they had access to certain confidential information regarding BAH Inc.'s personnel. Defendants deny the remaining allegations contained in Paragraph 107 of Plaintiff's Complaint.

108.    Responding to Paragraph 108 of Plaintiff's Complaint, Defendants admit that, by virtue of their positions as executives of BAH Inc., they had access to certain confidential and non-public information regarding BAH Inc.'s personnel.   Defendants deny the remaining allegations contained in Paragraph 108 of Plaintiff's Complaint.

109.    Defendants deny the allegations set forth in Paragraph 109 of Plaintiff's Complaint.

110.    Responding to Paragraph 110 of Plaintiff's Complaint, Defendants lack knowledge or information sufficient to form a belief as to the allegations contained therein and, therefore, deny the same.

111.    Defendants deny the allegations set forth in Paragraph 111 of Plaintiff's Complaint.

112.    Defendants deny the allegations set forth in Paragraph 112 of Plaintiff's Complaint.

113.    Defendants deny the allegations set forth in Paragraph 113 of Plaintiff's Complaint.

114.    Defendants deny the allegations set forth in Paragraph 114 of Plaintiff's Complaint.

115.    Defendants deny the allegations set forth in Paragraph 115 of Plaintiff's Complaint.

116.    Defendants deny the allegations set forth in Paragraph 116 of Plaintiff's Complaint.

117.    Defendants deny the allegations set forth in Paragraph 117 of Plaintiff's Complaint.

118.     Defendants deny the allegations set forth in Paragraph 118 of Plaintiff's Complaint.

119.     Defendants deny the allegations set forth in Paragraph 119 of Plaintiff's Complaint.

120.     Responding to Paragraph 120 of Plaintiff's Complaint, Defendants admit that they did not have consent or permission from BAH Inc., Booz Allen, or the Plan Administrator to disclose any confidential, proprietary, and/or sensitive information of BAH Inc. to any third party. Defendants deny that they engaged in any activity which breached the Plan and/or unlawful activity, and deny the remaining allegations contained in Paragraph 120 of Plaintiff's Complaint.

121.     Defendants admit the allegations set forth in Paragraph 121 of Plaintiff's Complaint.

122.     Defendants deny the allegations set forth in Paragraph 122 of Plaintiff's Complaint.

123.     Responding to Paragraph 123 of Plaintiff's Complaint, Defendant Fayad admits that he exercised 7,842 stock options on or about March 15, 2017. Defendants deny the remaining allegations contained in Paragraph 123 of Plaintiff's Complaint.

124.     Defendants admit the allegations set forth in Paragraph 124 of Plaintiff's Complaint.

125.     Responding to Paragraph 125 of Plaintiff's Complaint, Defendant Fayad admits that he sold 19,900 shares of stock on or about August 30, 2017. Defendants deny the remaining allegations contained in Paragraph 125 of Plaintiff's Complaint.

### E.     Defendants Are Terminated for Cause but Refuse to Forfeit Their Awards and Repay Their Earnings as Required by the Plan

126.    Responding to Paragraph 126 of Plaintiff's Complaint, Defendants admit BAH Inc. terminated their employment.  Defendants lack knowledge or information sufficient to form a belief as to the remaining allegations contained in Paragraph 126 of the Complaint and, therefore, deny the same.

127.    Defendants admit the allegations set forth in Paragraph 127 of Plaintiff's Complaint.

128.    Defendants deny the allegations set forth in Paragraph 128 of Plaintiff's Complaint.

129.    Defendants deny the allegations set forth in Paragraph 129 of Plaintiff's Complaint.

130.    Responding to Paragraph 130 of Plaintiff's Complaint, Defendants lack knowledge or information sufficient to form a belief as to the allegations contained therein and, therefore, deny the same.

131.    Defendants deny the allegations set forth in Paragraph 131 of Plaintiff's Complaint.

132.    Defendants deny the allegations set forth in Paragraph 132 of Plaintiff's Complaint.

133.    Responding to Paragraph 133 of Plaintiff's Complaint, Defendants state any alleged demand letters speak for themselves. Defendants deny the remaining allegations contained in Paragraph 133 of Plaintiff's Complaint.

134.    Responding to Paragraph 134 of Plaintiff's Complaint, Defendants state any alleged demand letters speak for themselves. Defendants deny the remaining allegations contained in Paragraph 134 of Plaintiff's Complaint.

135.    Responding to Paragraph 135 of Plaintiff's Complaint, Defendants admit that they have not repaid certain amounts to Booz Allen as demanded by Booz Allen. Defendants deny that they engaged in any activity which breached the Plan and/or unlawful activity, and deny the remaining allegations contained in Paragraph 135 of Plaintiff's Complaint.

136.    Responding to Paragraph 136 of Plaintiff's Complaint, Defendants admit that they and others initiated legal actions in the UAE arising out of their terminations from BAH Inc. Defendants lack knowledge or information sufficient to form a belief as to the remaining allegations contained in Paragraph 136 of the Complaint and, therefore, deny the same.

137.    Responding to Paragraph 137 of Plaintiff's Complaint, Defendants admit that they initiated legal actions in the UAE naming Booz Allen, BAH Inc., and Booz Allen Hamilton Inc. – Abu Dhabi as defendants.  Defendants lack knowledge or information sufficient to form a belief as to the remaining allegations contained in Paragraph 137 of the Complaint and, therefore, deny the same.

138.    Responding to Paragraph 138 of Plaintiff's Complaint, Defendants admit that they have commenced new employment. Defendants deny the remaining allegations contained in Paragraph 138 of Plaintiff's Complaint.

139.    Defendant Shehadi admits that, since October 2018, he has been employed as a Managing Director at Facebook in the MENA region. Defendants lack knowledge or information sufficient to form a belief as to the remaining allegations contained in Paragraph 139 of the Complaint and, therefore, deny the same.

140.    Defendant Shehadi admits that he travels to the United States, as needed, in connection with his employment with Facebook.  Defendants deny the remaining allegations contained in Paragraph 140 of Plaintiff's Complaint.

141.     Defendant Fayad admits that he commenced employment with Partners in Performance in January 2019 as a Director, assuming the role of Managing Director for the MENA region.   Defendants deny the remaining allegations contained in Paragraph 141 of Plaintiff's Complaint.

142.     Defendants deny the allegations set forth in Paragraph 142 of Plaintiff's Complaint.

143.     Defendants deny the allegations set forth in Paragraph 143 of Plaintiff's Complaint.

### FIRST CAUSE OF ACTION
### (Breach of Contract )
### *Against All Defendants*

144.     Defendants repeat, re-allege, and incorporate by reference their responses to Paragraphs 1 through 143 of Plaintiff's Complaint as if fully set forth herein.

145.     Defendants admit the allegations set forth in Paragraph 145 of Plaintiff's Complaint.

146.     Defendants admit the allegations set forth in Paragraph 146 of Plaintiff's Complaint.

147.     Responding to Paragraph 147 of Plaintiff's Complaint, Defendants lack knowledge or information sufficient to form a belief as to the allegations contained therein and, therefore, deny the same.   Specifically, although "Award Agreements" are vaguely referenced in Paragraphs 73 and 96 of Plaintiff's Complaint, they are not attached to the Complaint or defined in a way that gives Defendants notice of the specific agreements allegedly at issue.

148.     Responding to Paragraph 148 of Plaintiff's Complaint, Defendants lack knowledge or information sufficient to form a belief as to the allegations contained therein and,

therefore, deny the same.  Specifically, although "Award Agreements" are vaguely referenced in Paragraphs 73 and 96 of Plaintiff's Complaint, they are not attached to the Complaint or defined in a way that gives Defendants notice of the specific agreements allegedly at issue.

149.    Defendants deny the allegations set forth in Paragraph 149 of Plaintiff's Complaint.

150.    Defendants deny the allegations set forth in Paragraph 150 of Plaintiff's Complaint.

151.    Defendants deny the allegations set forth in Paragraph 151 of Plaintiff's Complaint.

152.    Defendants deny the allegations set forth in Paragraph 152 of Plaintiff's Complaint.

153.    Defendants deny the allegations set forth in Paragraph 153 of Plaintiff's Complaint.

## JURY DEMAND

To the extent the Paragraph entitled "Jury Demand" in Plaintiff's Complaint requires a response, Defendants admit that Plaintiff demands a jury trial.

## PRAYER FOR RELIEF

To the extent the Paragraph entitled "Prayer for Relief" in Plaintiff's Complaint requires a response, Defendants deny that Plaintiff is entitled to any relief whatsoever and denies all remaining allegations of such Paragraph, including those subparts designated (A) through (E).

## SECOND DEFENSE

Each and every allegation of the Complaint, including those asserted in any subheadings, which is not specifically admitted in this Answer is hereby denied.

### THIRD DEFENSE

Some or all of Plaintiff's claims fail to state a claim upon which relief may be granted and, therefore, such claims are barred.

### FOURTH DEFENSE

Plaintiff's claims are barred because Defendants' actions have not violated the terms of the Plan or any other applicable agreement(s) or contract(s), as drafted.

### FIFTH DEFENSE

Plaintiff's claims are barred by operation of laches, undue delay, and/or unclean hands.

### SIXTH DEFENSE

Plaintiff's claims are barred by the doctrines of waiver and/or estoppel.

### SEVENTH DEFENSE

Plaintiff's claims are barred due to this Court's lack of personal jurisdiction over Defendants.

### EIGHTH DEFENSE

Plaintiff's claims are barred by the doctrine of issue preclusion because the Court of First Instance in Abu Dhabi in the UAE previously ruled upon the exact issue which forms the basis of Plaintiff's Complaint (*i.e.,* whether Defendants were terminated for cause).

### NINTH DEFENSE

Plaintiff's claims are barred due to insufficient service of process and/or improper service.

### TENTH DEFENSE

Plaintiff's claims are barred, in full or in part, because Plaintiff terminated Defendants in

bad faith and without cause under the terms of the Plan and applicable law.

## ELEVENTH DEFENSE

Plaintiff's claims are barred, in full or in part, because Plaintiff has failed to abide by the terms of the Plan and/or any other applicable agreement(s) or contract(s), as drafted.

## TWELFH DEFENSE

Plaintiff's lawsuit must be dismissed under the doctrine of *forum non conveniens.*

WHEREFORE, having fully set forth their Answer to the Complaint herein, and having listed their affirmative and other defenses, Defendants hereby request that all claims against them be dismissed with prejudice, that judgment be entered in their favor, that their costs and fees in responding to this Complaint be assessed against Plaintiff, and that they be awarded all other and further relief as the Court may deem just and proper.

## COUNTERCLAIMS AND THIRD-PARTY COMPLAINT

RAMEZ TANNOUS SHEHADI ("Shehadi") and WALID FAYAD ("Fayad"), by and through their undersigned counsel, hereby assert their counterclaim(s) and third-party complaint against Booz Allen Hamilton Holding Corporation ("Booz Allen") and Booz Allen Hamilton Inc. ("BAH Inc.") (collectively, the "Booz Allen Defendants"), as follows:

## THE PARTIES, JURISDICTION, AND VENUE

1.      Booz Allen is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located in the State of Virginia.

2.      BAH Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located in the State of Virginia.  BAH Inc. may be served via its registered agent at:  CT Corporation System, 4701 Cox Road, Suite 285, Glen Allen, VA 23060.

3.      Upon information and belief, BAH Inc. is a subsidiary of Booz Allen.

4.      Although Shehadi and Fayad dispute that this Court has personal jurisdiction over them (as set forth in their Motion to Dismiss), this Court has personal jurisdiction over the Booz Allen Defendants by virtue of their conducting business and/or maintaining a principal place of business in the State of Virginia.

5.      Shehadi is a former employee of BAH Inc.  Shehadi is neither a resident nor a citizen of the United States.

6.      Fayad is a former employee of BAH Inc.  Fayad is neither a resident nor a citizen of the United States.

7.     This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) because this is an action between U.S. citizens and citizens of a foreign state, and the matter in controversy exceeds $75,000.00, exclusive of interest and costs.

8.     To the extent this Court finds personal jurisdiction over the Parties (including Shehadi and Fayad) and determines that Booz Allen's claims (as asserted in the Complaint) are not barred by collateral estoppel based on the holding(s) of the UAE court, venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## RELEVANT FACTS

### A.     *Background of Shehadi and Fayad*

9.     Shehadi obtained a B.S. degree in Mechanical Engineering from Rutgers University in 1994, followed by an M.A.Sc. degree in Industrial Engineering from the University of Toronto in 1998.  Since approximately 2001, Shehadi has been employed in various roles in the Middle East North Africa ("MENA") region—including being previously employed by BAH Inc. from 2001 to 2008.

10.     Fayad obtained an Engineer's Degree in Civil Engineering from École Centrale Paris, a postgraduate-level institute of research and higher education in engineering and science degree in France, in 1995.  Fayad subsequently obtained a Master's Degree in Civil & Environmental Engineering in 1997, as well as a Ph.D. in Microchip Reliability in 2000, from the Massachussetts Institute of Technology.  Since approximately 2002, Fayad has been employed in various roles in the MENA region—including being previously employed by BAH Inc. from 2002 to 2008.

**B.** **_BAH Inc. Actively Recruited Shehadi and Fayad to Abandon Other Job Opportunities_**

11.     In late 2013, while Shehadi and Fayad were employed by a third-party company, BAH Inc. initiated contact and began soliciting Defendants to come work for BAH Inc. in the MENA region.

12.     Specifically, Joe Logue, senior partner and leader of the Defense & Intelligence Group ("DIG") for BAH Inc., and Mike Jones, partner and executive vice president for the MENA region for BAH Inc., contacted Shehadi and Fayad while they were both working and living in the UAE.

13.     Acting on behalf of BAH Inc., Logue and Jones actively recruited Shehadi and Fayad—including, but not limited to, meeting with and interviewing Shehadi, Fayad, and other potential team members in the UAE and Lebanon.  The overwhelming majority of these in-person negotiations between BAH Inc., Shehadi, Fayad and the others being recruited occurred physically in the UAE or Lebanon or over the phone while they were physically in the Middle East.

14.     Given their education, experience, and breadth of knowledge of the MENA region, Shehadi and Fayad were highly sought after by BAH Inc. and other entities.

15.     BAH Inc. frequently affirmed the importance of Shehadi and Fayad to the company's future in the MENA region.  For example, Logue and Jones stated that BAH Inc. intended to leverage its technical expertise and financial resources with Shehadi's and Fayad's regional experience and General Management Consulting ("GMC") expertise to build a blended GMC business in the MENA region.

C.       **BAH Inc. Offered Shehadi and Fayad Compensation Packages Which, Among Other Incentives, Included Equity in Booz Allen**

16.      In order to entice Shehadi and Fayad to leave an offer from a competing company, BAH Inc. offered them competitive, secured four-year financial packages to serve as Executive Vice Presidents for BAH Inc.  BAH Inc. proposed this package in order to "keep whole" Shehadi and Fayad as compared to the package offered by their current employer.

17.      As Executive Vice Presidents, Shehadi and Fayad were charged with overseeing BAH Inc.'s efforts in the MENA region.

18.      On April 4, 2014, BAH Inc. sent offer letters to Shehadi and Fayad memorializing the terms of their employment, as well as their compensation and equity packages (among other information).

19.      Consistent with prior discussions, BAH Inc.'s offer letters represented that "[a]s you know, we are committed to accelerating the growth of our business in our International Account.  Your addition to our Officer corps is essential to our growth."

**i.       Compensation and Equity Packages Given to Shehadi and Fayad**

20.      The offer letters described a "Total Rewards" program for Shehadi and Fayad. The "Total Rewards" financial package consisted of "Compensation (Base Draw and Cash Performance Bonus), Equity, and Benefits."

21.      The compensation for Fayad and Shehadi was based on a "base draw" system, where employees are assigned points based on their "level" and a variety of other factors—such as consulting proficiency, professional accomplishments, and financial contribution.

22.      As set forth in Shehadi's offer letter, Shehadi's total annual base draw for FY2014 was $700,000 (based on $2,500 per point value and an assigned 280 points).  Shehadi was also eligible to receive performance bonuses, as well as a supplemental "Partner annual performance

bonus" which was valued at $123,000 for FY2014. Within six months of his start of employment, Shehadi's compensation was adjusted to $750,000 (*i.e.*, 300 points).

23.     As set forth in Fayad's offer letter, Fayad's total annual base draw for FY2014 was $600,000 (based on $2,500 per point value and an assigned 240 points). Fayad was also eligible to receive performance bonuses, as well as a supplemental "Partner annual performance bonus" which was valued at $97,000 for FY2014.

24.     As incentive for Shehadi and Fayad to forego other employment opportunities, they were each offered a "Sign-On Bonus."

25.     As stated in Shehadi's offer letter:

"In addition to the standard Total Rewards, you have been approved for up to a $448,000 sign-on bonus as compensation for the annual bonus (or portion thereof) you may forfeit as a result of your departure from your current employer. The final amount of your sign-on bonus will be determined as of your date of hire with [BAH Inc.], and will be calculated as the difference between $448,000 and any bonus amount you received from your current employer."

26.     Likewise, as stated in Fayad's offer letter:

"In addition to the standard Total Rewards, you have been approved for up to a $336,000 sign-on bonus as compensation for the annual bonus (or portion thereof) you may forfeit as a result of your departure from your current employer. The final amount of your sign-on bonus will be determined as of your date of hire with [BAH Inc.], and will be calculated as the difference between $336,000 and any bonus amount you received from your current employer."

27.     As further incentive to get them to leave their current employ and join BAH Inc., BAH Inc. also provided Shehadi and Fayad equity in the form of restricted stock or a comparable equity award, as well as option grants under Booz Allen's Equity Incentive Plan ("EIP").

28.     As set forth in their respective offer letters: "Any stock options grant shall be subject to the terms and conditions substantially as set forth in the EIP and the stock option agreement. Any restricted stock grant shall be subject to the terms and conditions substantially as set forth in the EIP and the restricted stock agreement."

29.     Following the commencement of their employment, Booz Allen issued the Second Amended and Restated Equity Incentive Plan to amend and restate the terms of the EIP (collectively, these plans are referred to as the "Plan").

30.     As stated in their respective offer letters, Shehadi was granted stock options valued at $130,000, and Fayad was granted stock options valued at $100,000.  These options were to "vest ratably over a 5 year period, with the first vesting period on March 31, 2015, conditional on [their] start date with the firm being on or before October 1, 2014."

31.     As part of their incentive package, BAH Inc. also provided Shehadi and Fayad with "Retention Bonus[es]" for a four-year period.

32.     These retention bonuses were specifically designed to match compensation offers made by another entity to Shehadi and Fayad for the express purpose of enticing them to work for BAH Inc.

33.     Shehadi and Fayad would not have accepted employed at BAH Inc. absent its offer to provide them with secured, four-year financial packages.

34.     As stated in Shehadi's offer letter:

"**Retention Bonus**.  In addition to the standard Total Rewards described above, you have been approved for a <u>retention bonus valued at $1,998,663</u>, which will be delivered entirely in Restricted Stock, or a comparable equity award at the firm's discretion, in accordance with applicable local legal requirements, <u>which will vest ratably over a 4 year period</u>.  The award will be performance based (50%) and time-based (50%).  The specific metrics tied to the performance based component will be included in your Restricted Stock Agreement."  (emphasis added).

35.     As stated in Fayad's offer letter:

"**Retention Bonus**.  In addition to the standard Total Rewards described above, you have been approved for a <u>retention bonus valued at $1,398,813</u>, which will be delivered entirely in Restricted Stock, or a comparable equity award at the firm's discretion, in accordance with applicable local legal requirements, <u>which will vest ratably over a 4 year period</u>.  The award will be performance based (50%) and time-based (50%).  The specific metrics tied to the performance based component will be included in your Restricted Stock Agreement."  (emphasis added).

### ii.  Shehadi's and Fayad's Offer Letters Also Contained Non-Compete Agreements with Booz Allen and BAH Inc.

36.     In addition to referencing the Plan, BAH Inc.'s offer letters also attached "Officer Non-Competition Agreement[s]" for both Shehadi and Fayad (collectively, the "Non-Compete Agreements").

37.     The Non-Compete Agreements define "Group" to mean "the Firm and all companies which are for the time being either a holding company of the Firm or a subsidiary of either the Firm or any such holding company." (emphasis added).

38.     Therefore, the definition of "Group" in the Non-Compete Agreements includes Booz Allen and BAH Inc.

39.     Further, the confidentiality, non-solicitation, non-recruitment, and non-competition provisions of the Non-Compete Agreement (among other relevant provisions) explicitly reference Shehadi's and Fayad's obligations to the "Group."

40.     As such, Booz Allen and BAH Inc. were parties to, and beneficiaries of, the restrictive covenants at issue in the Non-Compete Agreements.

41.     The Non-Compete Agreements contain a choice of law provision, stating:

"**Governing Law.**   The Agreement shall be governed by, and construed in accordance with, the laws of the Emirate of Abu Dhabi and Federal Laws of the UAE."

42.     The Non-Compete Agreements also contain a forum selection provision, stating:

"**Forum Selection.**  Each of the parties agrees to submit to the non-exclusive jurisdiction of Abu Dhabi courts with regard to any claim or matters arising under this Agreement."

43.     On April 14, 2014, Shehadi executed and accepted the terms of his offer letter, which specifically referenced the Plan and his respective Non-Compete Agreement.

44.     On April 14, 2014, Fayad executed and accepted the terms of his offer letter, which specifically referenced the Plan and his respective Non-Compete Agreement.

**D.      Shehadi and Fayad Are Hired and Exceed Expectations of their Positions; However, BAH Inc. Purported to Terminate Them With "Cause"**

45.      On or about June 2014, Shehadi and Fayad commenced their employment at BAH Inc.

46.      Over the next few years, despite a lack of support and legacy knowledge from BAH Inc., Shehadi and Fayad excelled in their senior executive roles.

47.      For instance, from 2014 to 2017, Shehadi, Fayad, and the partner team recruited with them built and grew the business in the MENA region by a factor of five—from approximately $20 million in 2014 to $100 million in 2017.

48.      Although the regional work was primarily secured by MENA-based executives—including Shehadi and Fayad—through direct proposal work and appeals for bids lost, BAH Inc. began to give U.S. leadership increased oversight of the MENA portfolio as part of BAH Inc.'s shift in focus to defense/cyber/intelligence.

49.      The U.S. leadership arbitrarily imposed a hiring freeze in 2016 based on the operations of the U.S. market and in complete disregard of MENA leadership and the MENA markets, despite an agreement to protect and invest in the business.  The hiring freeze led to staff burn out, causing many MENA-based employees to leave BAH Inc.

50.      The environment in the MENA region worsened when BAH Inc. arbitrarily determined not to pay bonuses for the MENA staff for FY2016—despite commitments made to Shehadi and Fayad upon hiring and during the commencement of employment.

51.      The U.S. leadership at BAH Inc. also reduced office sizes and locations in the MENA region.  For example, BAH Inc. originally agreed to build out three floors in the company's Beirut location.  Nonetheless, U.S. leadership subsequently reduced the footprint to

two floors and later attempted to (unsuccessfully) shut down one of the floors despite continued commercial growth.

52.     On April 20, 2017, due to a change in his job title, Fayad received a second offer letter from BAH Inc.  As with his original offer letter, Fayad's second offer letter set forth information regarding his salary, annual performance bonus, and unvested equity.  Specifically, that letter stated: "Unvested equity will continue to vest during your employment."

53.     Further, in the April 2017 offer letter, BAH Inc. stated: "In addition to your base salary, you will be eligible to participate in an incentive bonus plan.  This bonus could result in an additional $500,000, which is anticipated to be paid out in June 2018.  This award will be based on your ability to achieve a new revenue target of $4 million (USD). . . ."  By his termination, Fayad had exceeded the $4 million revenue goal.

54.     On September 29, 2017, due to increased staff departures and concerns regarding the U.S. leadership's management of the MENA region (including concerns regarding payment and treatment of staff), MENA senior leadership—including Shehadi and Fayad—met in Dubai to discuss and strategize regarding the support needed from U.S. leadership to correct issues in the MENA region.  The MENA leadership team also discussed the steps it must take to be successful moving forward.  BAH Inc.'s U.S. leadership was informed of this meeting in advance.

55.     The following Monday, on October 2, 2017, the MENA leadership team held a staff-wide call to: reconfirm their commitment to BAH Inc., attempt to quiet rumors that BAH Inc. was abandoning the region (as evidenced by employees leaving BAH Inc.), and summarize the outcome of the leadership meeting regarding increased efforts to improve operational challenges.

56.     Around the same time, Shehadi sent a letter to the U.S. leadership informing them

of the September 29th meeting and confirming their commitment to BAH Inc.

57.     BAH Inc.'s U.S. leadership never responded to the letter.

58.     Instead, on October 13, 2017, Shehadi and Fayad received a call from BAH Inc.

informing them of their termination.

59.     Upon information and belief, on the same day, nearly all members of BAH Inc.'s

MENA leadership (if not all of the members) were terminated.

### E.      BAH Inc. Wrongly Attempted to Terminate Shehadi and Fayad for "Cause" to Avoid Its and Booz Allen's Obligations Under the Plan

60.     On October 13, 2017, BAH Inc. sent termination letters to Shehadi and Fayad.

61.     In Shehadi's termination letter, BAH Inc. stated:

"As a follow-up to our discussion today, your employment with Booz Allen Hamilton is being terminated effective today (your 'Termination Date'). <u>For the avoidance of doubt, your dismissal is for cause based on the following grounds:</u>

- You are in are in breach of your clear statutory and fiduciary obligations as a Manager under the Companies legislation of the UAE not to cause harm to Booz Allen's business or to act in a competitive fashion with the business;

- You are in breach of your contractual, statutory and fiduciary duties as an employee owed to Booz Allen to act with reasonable care, to preserve the value of assets entrusted to you and to follow all reasonable instructions and guidance set out in the Booz Allen's policies and not to act contrary to the law;

- You are in breach of Booz Allen's Code of Business Ethics and Conduct as it relates to conflicts of interest; and

- You are in breach of the Non-Competition Agreement which forms part of your contract of employment and in particular have sought to recruit employees of the business for the benefit of yourself and/or a third party and have taken tangible steps to set up and market a new business to third parties or otherwise in competition with Booz Allen." (emphasis added).

62.     Similarly, in Fayad's termination letter, BAH Inc. stated (in nearly identical

fashion):

"As a follow-up to our discussion today, your employment with Booz Allen Hamilton is being terminated effective today (your 'Termination Date'). <u>For the avoidance of doubt, your dismissal is for cause based on the following grounds:</u>

- You are in breach of your contractual, statutory and fiduciary duties as an employee owed to Booz Allen to act with reasonable care, to preserve the value of assets entrusted to you and to follow all reasonable instructions and guidance set out in the Booz Allen's policies and not to act contrary to the law;

- You are in breach of Booz Allen's Code of Business Ethics and Conduct as it relates to conflicts of interest; and

- You are in breach of the Non-Competition Agreement which forms part of your contract of employment and in particular have sought to recruit employees of the business for the benefit of yourself and/or a third party and have taken tangible steps to set up and market a new business to third parties or otherwise in competition with Booz Allen." (emphasis added).

63.     Tellingly, despite BAH Inc. stating that Shehadi and Fayad were terminated for cause, the termination letters did not identify any specific actions which allegedly violated the law, the Plan, and/or any other agreements, contracts, or policies between Shehadi and Fayad, on the one hand, and the Booz Allen Defendants, on the other hand.

64.     Likewise, although BAH Inc. stated that Shehadi and Fayad breached their "Non-Competition Agreements," the termination letters did not identify any businesses or employees whom Shehadi or Fayad allegedly worked for and/or recruited to compete with any of the Booz Allen Defendants.

65.     Among other information contained in the termination letters, BAH Inc. set forth its position with respect to Shehadi's and Fayad's base compensation, "end-of-service" gratuity payment, prorated bonuses, and other compensation.

66.     With respect to Shehadi's and Fayad's equity under the Plan, the termination letters stated:

"**Equity.**  All equity you hold in Booz Allen Hamilton Holding Corporation, including, but not limited to, Class A common stock, restricted stock, restricted stock units, and stock options granted or issued to you pursuant to the Booz Allen Hamilton Holding

Corporation Amended and Restated Equity Incentive Plan or the Second Amended and Restated Equity Incentive Plan, referred to collectively as the 'EIP,' shall be governed by the terms of the EIP and any applicable Award Agreements, to include but not limited to Article XI of the EIP. Specifically, because of the basis of your termination, you are deemed to have forfeited all outstanding unvested equity and vested/unexercised stock options based on provisions 1.9 and 11.1 of the EIP. Further, shares of Class A common stock that you received from prior settlements, vestings, and option exercises within the past 12 months may be subject to forfeiture and/or disgorgement and be paid to the Company together with all gains earned or accrued due to the exercise of such awards or sale of Company common stock issued pursuant to such awards." (emphasis added).

67.     In other words, BAH Inc. asserts that Shehadi's and Fayad's terminations were for "Cause" as defined in the Plan.

68.     As stated in the termination letters, among other reasons, BAH Inc. purported to terminate Shehadi and Fayad for "Cause" based on their alleged breach(es) of their respective Non-Compete Agreements—which each contain UAE choice of law and forum selection provisions.

69.     The Booz Allen Defendants never provided Shehadi or Fayad with additional information regarding their alleged actions to justify their termination for "Cause."

### E.     Shehadi and Fayad Commence Legal Action in the UAE, and the UAE Court Determined They Were "Arbitrarily Dismissed" by BAH Inc.

70.     In December 2017, Shehadi, Fayad, and the four other affected partners sued the Booz Allen Defendants (in addition to another entity) in the UAE, asserting that BAH Inc. terminated them without "Cause" and, accordingly, that they were entitled to certain compensation and benefits identified in agreements, including the Plan (hereinafter, the "UAE Lawsuit").

71.     As a result of their unlawful terminations, Shehadi and Fayad sought money damages and other relief in the UAE Lawsuit.

72.     During the course of litigation, the Booz Allen Defendants submitted hundreds of pages of evidence in the UAE Lawsuit—including, but not limited to, Shehadi's and Walid's

stock incentive plans and other evidence the Booz Allen Defendants used to support their claim that Shehadi and Walid were not arbitrarily dismissed.

73.     The Booz Allen Defendants even submitted an expert report regarding the valuation of stock under the stock incentive plans.

74.     On May 13, 2019, the parties attended a public hearing in front of the Abu Dhabi Court of First Instance.

75.     All parties were represented by legal counsel and were given the opportunity to present pleadings, exhibits, and other evidence to the court for its consideration.

76.     After more than 14 months of active litigation in the UAE Lawsuit, as well as the May 13th public hearing, the UAE Court determined that Shehadi and Walid were both "arbitrarily dismissed"—which, under UAE law, means they were dismissed "without any justifiable reasons."

## COUNT I – BREACH OF CONTRACT AND FAILURE TO EXERCISE CONTRACTUAL DISCRETION IN GOOD FAITH

77.     Shehadi and Fayad repeat and re-allege each and every allegation contained in the above paragraphs as if fully set forth herein.

78.     By virtue of the Plan and related documents which reference the Plan (such as Shehadi's and Fayad's offer letters), the Booz Allen Defendants have legally enforceable obligation(s) to Shehadi and Fayad.

79.     The Booz Allen Defendants owed Shehadi and Fayad an implied duty of good faith and fair dealing in carrying out its contractual obligations under the Plan and related documents.

80.     Similarly, the Booz Allen Defendants were required to exercise contractual discretion under the Plan and related documents in good faith.

81.    As set forth above, the Booz Allen Defendants breached their legal obligations to Shehadi and Fayad under the Plan and related documents which reference the Plan.

82.    For instance, the Booz Allen Defendants acted arbitrarily and in bad faith when they purported to terminate Shehadi and Fayad for "Cause" under the Plan and related documents.

83.    The Booz Allen Defendants did not articulate any legitimate basis to support a termination for "Cause" or provide any evidence to support such a decision.

84.    Further, after considering the legal arguments and evidence from the parties, the UAE Court has already determined that Shehadi and Fayad were "arbitrarily dismissed."

85.    The contractual breach by the Booz Allen Defendants has resulted in direct injury and harm to Shehadi and Fayad.

86.    The Booz Allen Defendants have acted in bad faith in order to avoid their obligations under the Plan and related documents for its own financial benefit.

87.    For instance, despite meeting their contractual obligations under the Plan and related documents (including performance and retention obligations), Shehadi and Fayad have been deprived significant financial compensation and equity—including, but not limited to, the full payment of their retention bonuses.

88.    Further, the Booz Allen Defendants have caused significant injury and harm to Shehadi and Fayad by claiming—in bad faith and without substantial justification—that Shehadi and Fayad forfeited all outstanding unvested equity and vested/unexercised stock options (among other actions) and/or that they must disgorge such stocks and other equity.

89.    As a direct and proximate result of the Booz Allen Defendants' contractual breaches, Shehadi and Fayad have suffered, and will continue to suffer, direct injury and harm.

90.     Therefore, Shehadi and Fayad are entitled to recover substantial monetary and other relief from the Booz Allen Defendants in an amount to be determined by this Court.

**WHEREFORE,** having asserted their counterclaims and third-party complaint against the Booz Allen Defendants, Shehadi and Fayad request that after due proceedings had, the Court:

(a)     award all compensation, monies, equity, and/or other damages for which Shehadi and Fayad are entitled by virtue of the Booz Allen Defendants' breach(es) of contract under the Plan and related documents;

(b)     determine and declare that Booz Allen Defendants' alleged termination of Shehadi and Fayad for "Cause" was wrongful and lacked good faith;

(c)     determine and declare that Booz Allen Defendants' are not entitled to the disgorgement and/or forfeiture of any stock, shares, or other equity under the Plan or related documents by Shehadi or Fayad;

(d)     award reasonable attorneys' fees and costs incurred by Shehadi and Fayad in an amount determined by the Court;

(e)     award pre- and post-judgment interest to the fullest extent permitted by law; and

(b)     award such other relief as the Court may deem just and proper.

[*SIGNATURE BLOCK ON FOLLOWING PAGE*]

Dated:  this 24th day of September, 2019.     Respectfully submitted,

By: /s/ B. Patrice Clair

B. Patrice Clair
Virginia Bar No. 80225
FORD & HARRISON LLP
1300 19th Street, N.W., Suite 420
Washington, DC  20036
Telephone: (202) 719-2000
Facsimile: (202) 719-2077
E-mail: pclair@fordharrison.com

Jeffrey D. Mokotoff
*Admitted Pro Hac Vice*
Patrick L. Ryan
*Admitted Pro Hac Vice*
FORD & HARRISON LLP
271 17th Street, N.W., Suite 1900
Atlanta, Georgia 30363
Telephone: (404) 888-3874
Facsimile: (404) 832-8729
E-mail: jmokotoff@fordharrison.com
E-mail: pryan@fordharrison.com

*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

BOOZ ALLEN HAMILTON HOLDING
CORPORATION,

        Plaintiff,

    v.

RAMEZ TANNOUS SHEHADI and
WALID FAYAD,

        Defendants.

CIVIL ACTION NO.
1:19-cv-00869-CMH-JFA

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 24th day of September, 2019, I caused the foregoing

document to be electronically filed with the Court using the CM/ECF system which will then

send electronic notification of the filing to the following:

Benjamin S. Boyd
DLA Piper LLP (US)
500 8th Street NW | Washington, DC 20004
Telephone: (202) 799-4000
Facsimile: (202) 799-5000
benjamin.boyd@us.dlapiper.com

/s/ B. Patrice Clair_____
B. Patrice Clair
Virginia Bar No. 80225
FORD & HARRISON LLP
1300 19th Street, N.W., Suite 420
Washington, DC  20036
Telephone: (202) 719-2000
Facsimile: (202) 719-2077
E-mail: pclair@fordharrison.com
*Attorney for Defendants*